**Kelvin HEYEN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 84A04–1002–CR–134.

Court of Appeals of Indiana.

Oct. 28, 2010.

Mark Everett Watson, Terre Haute, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Kelvin Heyen (Heyen), appeals his conviction for dealing in methamphetamine, a Class B felony,

Ind.Code § 35–48–4–1.1 and for being an habitual offender, I.C. § 35–50–2–8.

We affirm.

## ISSUES

Heyen raises five issues for our review, which we restate as the following six:

(1) Whether the trial court abused its discretion in admitting certain evidence;

(2) Whether the trial court erred in denying his motion at trial to reveal the identity of the confidential informant;

(3) Whether the evidence was sufficient to convict Heyen of dealing in methamphetamine and his habitual offender enhancement;

(4) Whether Heyen received ineffective assistance of trial counsel;

(5) Whether the trial court erred by not affording more weight to certain mitigators; and

(6) Whether his sentence is appropriate in light of his character and the nature of his offense.

## FACTS AND PROCEDURAL HISTORY

On April 24, 2007, Detective Karen Cross (Detective Cross), an officer with the Vigo County Sheriff's Department and a member of the Vigo County Drug Task Force, arranged a controlled methamphetamine buy from Heyen with the help of confidential informant # 174 (CI) at a predetermined location. Before the controlled buy, Detective Paul Hartzler (Detective Hartzler) searched the CI and the CI's car, which revealed that he did not have any contraband on him, and then wired him with an audio video recorder. The Detectives gave the CI $50, which had been photocopied, and instructed him to purchase half a gram of methamphetamine. Detectives then followed the CI to 3071 Old Paris Road in West Terre Haute, Indiana. While under audio video surveillance, the CI exchanged the money provided by the Detectives for a baggie containing a white substance, which later tested to be .38 grams of methamphetamine.

After the controlled buy, Detective Cross reviewed the videotape and identified Heyen as the person talking with the CI. Additionally, Detective Cross completed a background investigation on Heyen and discovered that he had prior felony convictions relating to controlled substances. Based on this information, Detective Cross set forth the facts underlying the request for an arrest warrant:

2. Affiant and Detectives met with [CI] on April 24, 2007 at a predetermined location[.] [CI] agreed and signed an agreement to assist the detectives in purchasing methamphetamine from [Heyen]. [CI] was searched and the vehicle which was going to be driven was also searched, nothing was located. [CI] was given an amount of photocopied drug task force buy money and a wire transmitter. Detectives followed the informant to the area of 3071 Old Paris Road in West Terre Haute. This is the known address for [Heyen] and [P.C.]. The [c]onversation was monitored by detectives for security. The [CI] returned to the predetermined staging area and gave affiant a plastic bag containing an off white substance. The [CI] and vehicle were searched and no other drugs or money was located.

3. Affiant returned to the Vigo County Drug Task [F]orce Office and weighed and field tested the contents in the plastic bag. The substance had a gross preliminary weight of .45 grams and had a positive field test result for the presence of methamphetamine.

4. Affiant reviewed the video tape and identified [Heyen] as the male in the video that the conversation and transac-

tion took place with [in] the garage area at the residence of 3071 Old Paris Road.

(Appellant's App. p. 4).

On August 13, 2007, the State filed an Information charging Heyen with Count I, dealing in methamphetamine, a Class B felony, I.C. § 35–48–4–1.1 and Count II, an habitual substance offender, I.C. § 35–50–2–10. On December 1, 2009, the State amended the habitual substance offender charge to an habitual offender charge. On December 15–16, 2009, a two-day jury trial was held. The jury found Heyen guilty as charged. On January 27, 2010, a sentencing hearing was held and the trial court sentenced Heyen to ten years for Count I and enhanced the sentence by fourteen years because of the habitual offender finding for a total of twenty-four years.

Heyen now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Admission of Evidence*

■ Heyen first argues that the trial court abused its discretion when it admitted certain evidence during the trial. Specifically, he contends that the arrest warrant was supported, in part, by hearsay statements of the CI and that the affidavit did not establish the credibility of the CI. Thus, he contends, the methamphetamine should not have been admitted at trial.

Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Ackerman v. State*, 774 N.E.2d 970, 974–75 (Ind.Ct.App.2002), *trans. denied.* We review the admission of evidence for an abuse of the trial court's discretion. *Taylor v. State*, 891 N.E.2d 155, 158 (Ind.Ct.App.2008), *trans. denied.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* We do not reweigh the evidence and we consider conflicting evidence in a light most favorable to the trial court's ruling. *Cole v. State*, 878 N.E.2d 882, 885 (Ind.Ct.App.2007). We also consider uncontroverted evidence in the defendant's favor. *Id.*

A court may issue warrants only upon probable cause. I.C. § 35–33–5–1; *see* U.S. Const. 4th amend., Ind. Const. article I, § 11. Indiana's warrant statute, Indiana Code section 35–33–5–2, provides, in pertinent part, that a judge generally may not issue a search or arrest warrant without an affidavit that: (1) particularly describes the house or place to be searched and the things to be searched for; (2) alleges substantially the offense in relation thereto and that the affiant believes and has good cause to believe that the things as are to be searched for are there concealed; and (3) sets forth the facts then in knowledge of the affiant or information based on hearsay, constituting probable cause.

■ In this case, Detective Cross was not attempting to rely on hearsay information from the CI. The affidavit was devoid of such information and additionally made no attempt to establish the CI's reliability. Rather, in its arrest warrant, the State relied solely upon the personal observations of Detectives Cross and Hartzler during the controlled drug buy. In *Flaherty v. State*, 443 N.E.2d 340, 341 (Ind.Ct. App.1982), we explained the mechanics of a controlled buy:

A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for

what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.

So long as the "controls are adequate, the affiant's personal observation of a controlled buy may be sufficient as grounds for finding probable cause." *Methene v. State*, 720 N.E.2d 384, 390 (Ind.Ct.App. 1999). Under such circumstances, even where the informant is not reliable, a court may accept the personal observations of the attesting officer as establishing probable cause. *Flaherty*, 443 N.E.2d at 341.

Detective Hartzler testified that he searched the CI and his vehicle prior to giving the CI photocopied buy money and sending him to make the purchase. Additionally, Detective Hartzler placed an audio video recording device on the CI that recorded the transaction. Detectives Cross and Hartzler followed the CI to Heyen's known residence at 3071 Old Paris Road in West Terre Haute, Indiana. During the entire drug buy, the CI was under audio video surveillance. After the controlled buy, the CI did not make contact with anyone else, went back to his car and met the Detectives at a staging location where Detective Cross was present while Detective Hartzler searched the vehicle and the CI. The CI was found to be in possession of a baggie with a white substance in it. Prior to seeking the arrest warrant, Detective Cross reviewed the videotape of the controlled buy provided by the CI.

We conclude that the facts presented in the affidavit were sufficient to establish probable cause to obtain an arrest warrant. Under these facts and circumstances, the trial court did not abuse its discretion when it admitted the evidence in question, because the underlying arrest warrant that recovered the evidence was valid.

■ To the extent that Heyen now argues that the evidence used was stale, as several months had passed from the day of the controlled buy and the time the State filed charges, we find the argument to be without merit. While it is true that stale information cannot support a finding of probable cause, that rule applies to the time from the commission of the crime to the time that the information is presented to a magistrate in order to obtain a search warrant so that the evidence of the conduct is still in the place to be searched. *Ramsey v. State*, 853 N.E.2d 491, 503 (Ind. Ct.App.2006), *trans. denied.* The rule does not apply to the timing of the State's decision to file charges. *Id.* To hold otherwise would be to vitiate statutes of limitations. *Id.* Therefore, Heyen's claim that the evidence was stale must fail.

## II. *Identity of the CI*

■ Next, Heyen argues that the trial court erred when it denied his oral motion to compel the identity of the CI. The general policy is to prevent disclosure of an informant's identity unless the defendant can demonstrate that disclosure is relevant and helpful to his defense or is necessary for a fair trial. *Mengon v. State*, 505 N.E.2d 788, 790 (Ind.1987). The burden rests with the defendant to demonstrate his need for disclosure. *Id.* Bare speculation that the informant's identity may possibly prove useful is not enough to justify disclosure, and an informant's identity shall not be disclosed to permit a mere "fishing expedition." *Mays v. State*, 907 N.E.2d 128, 131 (Ind.Ct.App.2009).

Heyen cites to *Roviaro v. U.S.*, 353 U.S. 53, 59–60, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), where the Supreme Court was

asked to determine whether the government had the right to withhold an informant's identity when the informant had "helped to set up the commission of the crime and ... was present at its occurrence." *Id.* at 56, 77 S.Ct. 623. Ultimately, the Court held that the government has a limited privilege to withhold the identity of a confidential informant from a criminal defendant, but that privilege gives way if the defendant proves that the disclosure of the informant's identity is "relevant and helpful" to his defense "or is essential to a fair determination of a cause." *Id.* at 60–61, 77 S.Ct. 623. To determine whether the government is required to disclose the identity of the informant, the court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. 623. This depends "on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

Heyen raises three related arguments that he was entitled to know the identity of the CI. First, he argues that the State waived its privilege to protect the CI because the Detectives "acknowledg[ed] [ ] the unreliability of the confidential informant." (Appellant's Br. p. 12). Second, he argues that the State failed to disclose exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Finally, he contends that failure to disclose the identity of the CI violated his Fifth Amendment right to remain silent and his Sixth Amendment rights to confrontation, compulsory process, and effective assistance of counsel.

Despite his argument, we note that Heyen must show that he did not know the identity of the informant. *See Allison v. State,* 527 N.E.2d 234, 237 (Ind.Ct.App.

1988) ("Necessarily, the defendant also has the burden of showing that the identity of the informant is unknown to the defense."), *trans. denied.* In *Smith v. State,* 829 N.E.2d 64, 71 (Ind.Ct.App.2005), we held that if the State can establish that the defendant knows the identity of the CI, the government no longer has a legitimate need to protect it. *Id.* (*citing Roviaro,* 353 U.S. at 60 n. 8, 77 S.Ct. 623). However, we also found in that case that the decision to withhold the CI's name was harmless error. *Id.*

As noted by the State and based on the evidence, it is clear from audio video tapes admitted into evidence as State's Exhibit's 3A and B that Heyen knew the identity of the CI. The CI knew the location of Heyen's residence without guidance from the Detectives. Additionally, during the transaction, Heyen and the CI discussed many mutual acquaintances and at one point, Heyen commented that the CI was "a good dude." (State's Exh. 3B). Therefore, based on their familiar interactions with each other, we conclude that Heyen has not shown that the CI's identity was unknown to him and any refusal by the trial court to disclose his identity or not to allow him to call the CI as a witness was harmless error.

### III. *Sufficiency of the Evidence*

Heyen argues that the evidence presented at trial was insufficient to support his conviction for dealing in methamphetamine and subsequently, his habitual offender enhancement. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State,* 872 N.E.2d 208, 212–13 (Ind.Ct.App.2007), *trans. denied.* We will consider only the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom and will affirm if the evidence and those inferences constitute substantial

evidence of probative value to support the judgment. *Id.* at 213. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

■ To establish that Heyen committed dealing in methamphetamine, a Class B felony, the State was required to prove that Heyen knowingly delivered methamphetamine to the CI. I.C. § 35–48–4–1.1. Based on the evidence presented, we find that the evidence was sufficient to show that Heyen dealt methamphetamine to the CI.

Detective Hartzler testified that he was responsible for searching the CI. He described the protocol he follows when he searches cars prior to controlled buys and testified that he did the same thing in this case. After thoroughly searching the CI, including all of his pockets, Detective Hartzler searched the CI's vehicle. He started from "top to bottom[,]" where he checked the visors, moved down to the dash board, carefully searched the vents and then the ashtray. (Transcript p. 204). He searched the glove compartment, the center console, under the seats, floor mats, and any little pocket or potential hiding place where the CI could have hid contraband.

After both the CI and his vehicle were searched, Detective Hartzler then equipped the CI with an audio video recording device. The Detectives then gave the CI money that had been photocopied and instructed him to purchase half a gram of methamphetamine. Thereafter, the Detectives followed the CI to 3071 Old Paris Road and kept him under constant surveillance during the drive there and while he was at the scene. The CI spent less than thirty minutes there, discussing cars and mutual acquaintances, purchasing the methamphetamine and then leaving. At all times, the CI was either in view of the Detectives or was under audio video surveillance. Once the CI returned to the staging area, he was searched and the only item the Detectives found was the baggie of methamphetamine. Adequacy of control goes to the weight and credibility of the evidence presented, which we will not reweigh. *Hudson v. State*, 462 N.E.2d 1077, 1083 (Ind.Ct.App.1984).

■ Despite Heyen's attempts to call into question the validity of the surveillance video because he argues that it is of poor quality, not every word of a recording need be intelligible for it to be admissible. *Dearman v. State*, 743 N.E.2d 757, 762 (Ind.2001). Rather, the recording, taken as a whole, must be of such clarity and completeness as to preclude speculation in the minds of the jurors as to its content. *Id.* "[T]he standard of quality expected of a recording in an interrogation room cannot be used to judge a recording of a person wearing a wire transmitter." *Kidd v. State*, 738 N.E.2d 1039, 1042 (Ind.2000).

■ The State's evidence is also sufficient to sustain Heyen's convictions as an habitual offender. Certified copies of judgments containing a defendant's name or a similar name may be introduced to prove the commission of prior felonies. *Hernandez v. State*, 716 N.E.2d 948, 953 (Ind.1999). While there must be supporting evidence to identify the defendant as the person named in the documents, the evidence may be circumstantial. *Id.* If the evidence yields logical and reasonable inferences from which the finder of fact may determine beyond a reasonable doubt that it was the defendant who was convicted of the prior felony, then a sufficient connection has been shown. *Id.*

Heyen argues that the only evidence tying Heyen to the prior convictions was the testimony of Wesley Wonderlin (Wonderlin), his probation officer, and because

Wonderlin was not present in 1990 when he was convicted, Wonderlin has no personal knowledge of Heyen's prior convictions. Thus, he argues, Wonderlin's testimony is "incredibly dubious."

 We may apply the "incredibly dubiosity" rule to impinge upon a jury's function to judge the credibility of a witness. *Surber v. State,* 884 N.E.2d 856, 868 (Ind.Ct.App.2008). Under the rule, "[i]f a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed." *Id.* "This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredibility dubiosity." *Id.* "Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Id.* at 869–70.

We find that the evidence was sufficient to convict Heyen of being an habitual offender and that the "incredible dubiosity" rule does not apply. Wonderlin identified Heyen in court as the person he began supervising after Heyen's release from prison in 1992 for a 1990 Class B felony dealing in a controlled substance conviction. Further, Wonderlin prepared a presentence investigation report on January 25, 2002, after Heyen had been convicted of Class B felony dealing in methamphetamine. The State submitted supporting documentation as Exhibits 13 and 14, which show that Heyen had been convicted of these offenses. Wonderlin's testimony, in conjunction with court certified documentation, sufficiently shows that Heyen was the individual convicted of the two prior unrelated drug offenses.

### IV. *Ineffective Assistance of Trial Counsel*

 Heyen argues that his trial counsel was ineffective. Specifically, he claims that his trial counsel failed to file a motion to suppress evidence or a motion to compel disclosure of the CI. A defendant may raise a claim of ineffective assistance of counsel on direct appeal; however, the defendant is foreclosed from subsequently relitigating that claim. *Woods v. State,* 701 N.E.2d 1208, 1220 (Ind.1998), *cert. denied.*

To prevail on a claim of ineffective assistance of counsel, Heyen must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced him that he was denied a fair trial. *Coleman v. State,* 694 N.E.2d 269, 272 (Ind.1998) (citing *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a strong presumption that counsel rendered adequate assistance. *Id.* "Evidence of isolated poor strategy, inexperience or bad tactics will not support a claim of ineffective assistance." *Id.* at 273. "Counsel's performance is evaluated as a whole." *Lemond v. State,* 878 N.E.2d 384, 391 (Ind. Ct.App.2007), *trans. denied.* To establish the prejudice prong of the test, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Sims v. State,* 771 N.E.2d 734, 741 (Ind.Ct.App. 2002), *trans. denied.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Prejudice exists when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result of the proceeding fundamentally unfair or unreliable." *Coleman,* 694 N.E.2d at 272.

 Heyen argues that had his trial counsel filed a pre-trial motion to suppress

the evidence obtained from the controlled buy or to compel the disclosure of the confidential informant, "the trial court would have been compelled to grant the motion and based on the confidential informant unreliability and credibility issues, the State more likely than not would have dismissed the charges against him." (Appellant's Br. p. 25).

First, we note that we have already found that the probable cause in the arrest warrant was justified based on the independent observation of the Detectives and the CI's credibility was not vital. Thus, the motion to suppress or disclose the CI's identity would have likely failed. Additionally, although his trial counsel did not file a motion to suppress, his counsel's cross-examination was calculated to raise doubts about the credibility of the CI. As our supreme court has observed, "there is no one way to defend a particular defendant, and so a reviewing court must grant the trial attorney significant deference in choosing a strategy which, at the time and under the circumstances, he or she deems best." *Potter v. State*, 684 N.E.2d 1127, 1133 (Ind.1997). As such, trial counsel's decision not to file a motion to suppress was a matter of trial strategy.

### V. *Mitigators and Aggravators*

■ Heyen argues that the trial court erred when it sentenced him. Specifically, Heyen contends that the trial court failed to consider as mitigating circumstances his poor physical health and that the crime did not seriously harm other people.

■ Heyen's offense was committed after the April 25, 2005, revisions to Indiana's sentencing scheme. Under the current sentencing scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g,*

875 N.E.2d 218 (Ind.2007). We review the sentence for an abuse of discretion. *Id.* An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Id.*

■ A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any— but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law." *Id.* at 490–91. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. However, the relative weight or value assignable to reasons properly found is not subject to review for abuse of discretion. *Id.* We may review both oral and written statements in order to identify the findings of the trial court. *See McElroy v. State*, 865 N.E.2d 584, 589 (Ind.2007).

■ Here, the trial court found Heyen's prior criminal history, which consists of nine felony convictions, to be an aggravating circumstance and found his medical health to be mitigating circumstance. Ultimately, the trial court found that the aggravating circumstance outweighed the mitigating circumstance. To the extent that Heyen argues that the trial court should have given more weight to his health condition, a brain tumor, the trial court is not obligated to weigh or credit facts proffered as mitigating by the defendant in the way that the defendant sug-

gests they should be weighed or credited. *Abel v. State*, 773 N.E.2d 276, 280 (Ind. 2002). Additionally, with respect to his argument that the trial court did not take into consideration the fact that the crime did not seriously harm another person, although the trial court has an obligation to consider all mitigating circumstances identified by a defendant, it is within the trial court's sound discretion whether to find mitigating circumstances. *Newsome v. State*, 797 N.E.2d 293, 301 (Ind.Ct.App. 2003), *trans. denied.* We will not remand for reconsideration of alleged mitigating factors that have debatable nature, weight, and significance. *Id.* As such, we do not find that the trial court erred when it did not give more weight to his medical condition.

## VI. *Appropriateness of Sentence*

█ Finally, Heyen claims that the sentence imposed by the trial court is inappropriate. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind.2008). As explained in *Anglemyer*, it is on the basis of Appellate Rule 7(B) alone that a criminal defendant may now challenge his sentence "where the trial court has entered a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence that is supported by the record, and the

reasons are not improper as a matter of law, but has imposed a sentence with which the defendant takes issue." *Id.* at 491. On appeal, it is the defendant's burden to persuade us that the sentence imposed by the trial court is inappropriate. *Id.* at 494.

Heyen was convicted of a Class B felony, for which the minimum sentence is six years, the maximum sentence is twenty years, and the advisory sentence is ten years. I.C. § 35–48–4–1.1. Heyen was sentenced to the advisory sentence of ten years and his sentence was enhanced by fourteen years for being an habitual offender. I.C. § 35–50–2–8.

With regard to the character of the offender, we note that Heyen has a lengthy criminal history which began in 1987 and include nine felony and numerous misdemeanors convictions. The trial court noted that Heyen has a history of drug offenses, some including the possession of methamphetamine and the illegal possession of anhydrous ammonia. Despite Heyen's argument that he manufactured methamphetamine and used to self-medicate his headaches due to his brain tumor, this does not mitigate the fact that he has been using illegal drugs since 1987. In addition, he was convicted of several other criminal offenses, including theft, larceny, operating while intoxicated, criminal conversion, theft and attempted theft. It is clear that Heyen is unable to obey the law and continues to commit the same crimes again and again.

With regard to the nature of the offense, Heyen was convicted of the same crime in 2007 and was found to be in possession of precursors to manufacture methamphetamine. Even though Heyen claims no one was injured from his crime, the fact that he continued to manufacture methamphetamine after serving prison time is a threat

to the general safety of the community. As such, we cannot say that his sentence was not inappropriate in light of the nature of the offense and the character of the offender.

### CONCLUSION

Based on the foregoing, we conclude that: (1) the trial court did not abuse its discretion when it admitted evidence of Heyen's arrest; (2) the trial court did not err when it denied his oral motion to reveal the identity of the CI; (3) the evidence was sufficient to convict him of dealing in methamphetamine and to support his habitual offender enhancement; (4) he did not receive ineffective assistance of trial counsel; (5) the trial court did not err by not affording more weight to his health condition; and (6) his sentence is appropriate in light of his character and the nature of his offense.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.