**Shane A. SCHMIDT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 38A02–1008–CR–862.**

Court of Appeals of Indiana.

July 19, 2011.

Transfer Denied Sept. 1, 2011.

Mark Small, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Shane Schmidt challenges his conviction of and sentence for Class C felony criminal confinement.[1] Because there was sufficient evidence to support the conviction and he has not demonstrated his sentence is inappropriate, we affirm.

## FACTS AND PROCEDURAL HISTORY

Schmidt and A.C. dated sporadically for four years and had one child together. In February 2010, they broke up. On April 16, 2010, A.C. arrived home around midnight, with nineteen-year-old Matt Ward. After they arrived, Schmidt began pounding on the door and yelling at A.C. to open the door. A.C. refused to open the door, and Schmidt entered the home through an open window. Ward was in the bathroom when Schmidt entered the house.

A.C. tried to grab her cell phone, but Schmidt took it away from her and removed the battery. Schmidt then began to pound on the bathroom door, telling Ward to come out. Schmidt kicked in the bathroom door and made Ward and A.C. sit in the living room for thirty to forty-five minutes while he was "ranting, ranting, ranting." (Tr. at 29.) At one point, Schmidt threw A.C. against a wall and began to choke her. Schmidt allowed Ward to leave, but only after threatening to kill him and forcing him to drink beer.[2]

---

1. Ind.Code § 35–42–3–3(a)(1); Ind.Code § 35–42–3–3(b)(1)(C).

2. Ward returned home, but did not contact the police or tell anyone what had happened because Schmidt had told him the police would arrest him for underage drinking.

After Ward left the house, Schmidt told A.C. to go to the bedroom with him. Schmidt went through A.C.'s texts on her cell phone. When he realized A.C. was dating Ward, Schmidt became enraged and physically assaulted A.C. She testified "[h]e was punching me in the arms. He kicked me in the ribs, choked me, pulled me by hair, slammed my head into the wall. Just over and over again." (*Id.* at 35.)

After beating A.C., Schmidt ordered her to remove her clothes. When she did not remove them fast enough, Schmidt began to tear her underwear off. Once A.C.'s clothes were off, Schmidt tied her hands behind her back and placed her face down on the floor. Schmidt threatened to rape her. At one point, Schmidt poured beer down A.C.'s throat and told her that it would "make it less painful [for her] … before he killed [her]." (*Id.* at 38.)

Schmidt untied A.C., then went through phases of calm and anger. When Schmidt believed A.C. might escape, he retied her. At Schmidt's direction, A.C. ordered a pornographic movie on her television. Schmidt told A.C. that he was going to have sex with her. A.C. did not want to have sex with him, but she did not resist because she was scared Schmidt would kill her if she resisted.

At about three or four o' clock in the morning, Schmidt and A.C. left the house. They stopped at a gas station and then arrived in Anderson, Indiana, at six-thirty that morning. A.C. testified, "I was in flip flops, had nowhere to go and [was] scared out of my mind and very very sore." (*Id.* at 50.)

Afterward, Schmidt took A.C. to his apartment and kept his arm around A.C. while he slept for several hours. After waking, Schmidt told A.C. to turn on her phone, which then contained many messages from A.C.'s mother asking where she was. In one, A.C.'s mother mentioned the police, and Schmidt began to worry. A.C. pled with Schmidt to take her to her father's house, and Schmidt drove her there. After Schmidt left, A.C. told her father what happened, and he took her to the police.

Police arrested Schmidt. After waiving his rights, Schmidt told police he had been with A.C. on April 17, but contended A.C. let him into the house. The State charged Schmidt with Class B felony rape,[3] Class C felony criminal confinement, and Class D felony criminal confinement,[4] and alleged he was an habitual offender.[5] A jury found Schmidt guilty of Class C felony criminal confinement, and Schmidt admitted he was an habitual offender. The trial court sentenced Schmidt to eight years for the offense, enhanced by eight years due to his habitual offender status.

## DISCUSSION AND DECISION

### 1. *Sufficiency of the Evidence*

■ When reviewing sufficiency of evidence, we do not reweigh evidence or determine credibility of witnesses. *Bruno v. State,* 774 N.E.2d 880, 882 (Ind.2002). We review the evidence in the light most favorable to the verdict, *Hill v. State,* 513 N.E.2d 1216, 1216 (Ind.1987), and affirm the conviction if "the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt…." *McHenry v. State,* 820 N.E.2d 124, 127 (Ind.2005).

---

**3.** Ind.Code § 35–42–4–1(a)(1).

**4.** Ind.Code § 35–42–3–3(a)(1).

**5.** Ind.Code § 35–50–2–8.

Schmidt was convicted of criminal confinement, which occurs when a person "knowingly or intentionally confines another person without the other person's consent, or removes another person, by fraud, enticement, force, or threat of force, from one place to another." Ind.Code § 35–42–3–3. Criminal confinement is a Class C felony if it results in bodily injury to a person other than the perpetrator. *Id.*

There was sufficient evidence to support Schmidt's conviction. Ward testified Schmidt entered the house through a window and forced Ward and A.C. to listen to his tirade. Similarly, A.C. testified about Schmidt's behavior both before and after Ward left. The State submitted pictures of A.C.'s wounds and torn underwear. Police found a button from Schmidt's coat next to the window through which he entered. Schmidt admitted he was with A.C. on April 17.

Schmidt urges us to consider evidence A.C. might have had opportunities to escape but did not try to do so. Because this would require us to reweigh the evidence, we decline to do so. *See Hill,* 513 N.E.2d at 1216 (holding the court will not reweigh the evidence or judge the credibility of witnesses).

Schmidt also suggests A.C. consented to the confinement because she did not try to escape. Other evidence permits an inference that A.C. did not consent. A.C. did not open the door for Schmidt; rather, he entered the house through a window. Schmidt bound A.C. on two occasions during this ordeal. A.C. testified that when they were at the gas station, she was sore from the beating by Schmidt, improperly dressed to attempt an escape, and had no where to go. This evidence is sufficient to infer A.C. did not consent to confinement by Schmidt.

Schmidt cites *Cunningham v. State,* 870 N.E.2d 552, 553 (Ind.Ct.App.2007), where Cunningham was the victim's husband and lived in the house where he was alleged to have confined the victim. Cunningham legally entered the home and there was no evidence he restrained the victim. We held evidence of abuse only was insufficient to support an inference of confinement necessary for a criminal confinement conviction. In the case before us, by contrast, Schmidt was not a resident of A.C.'s home, he entered illegally, and he restrained A.C. by binding her wrists. Thus, *Cunningham* is inapposite.

Our Indiana Supreme Court has held binding victims is sufficient to prove confinement because it is "a substantial interference with their liberty." *Hansford v. State,* 490 N.E.2d 1083, 1088 (Ind.1986), *abrogated on other grounds by Richardson v. State,* 717 N.E.2d 32 (Ind.1999). The evidence most favorable to the judgment is that Schmidt bound A.C. at two distinct points during this one incident. Thus, the evidence was sufficient to prove criminal confinement.

### 2. *Appellate Rule 7(B)*

Even if the trial court did not abuse its discretion in sentencing, the Indiana Constitution permits our independent review of a sentence. Ind. Const. Art. 7 § 4; *Buchanan v. State,* 767 N.E.2d 967, 972 (Ind.2002). In this review, we consider the character of the offender and the nature of the offense. Ind.App. R. 7(B).

Schmidt asserts he is employed and has dependent children; this, he argues, speaks favorably of his character. According to the pre-sentence investigation report, Schmidt is unemployed, he does not pay child support,[6] and he has no relation-

---

6. A child support case is pending against him.

ship with two of his four children. Schmidt has not demonstrated his sentence is inappropriate based on his character. *See, e.g., Reese v. State*, 939 N.E.2d 695, 703 (Ind.Ct.App.2011) (refusing to reweigh the low mitigating weight given to the defendant's dependent children), *trans. denied.*

Another indicator of a defendant's character is his criminal history. *Childress v. State*, 848 N.E.2d 1073, 1081 (Ind.2006). Schmidt has an extensive criminal record. As a juvenile, Schmidt had adjudications for offenses that would be Class C felony battery and Class B felony burglary if committed by an adult. As an adult, Schmidt was convicted of twelve misdemeanors including fleeing a police officer, criminal mischief, public intoxication, disorderly conduct, operating a vehicle while intoxicated, two convictions of battery, interference with the reporting of a crime, and three convictions of resisting law enforcement. He has been convicted of four felonies: attempted vehicle theft, possession of a sawed off shotgun, escape, and battery resulting in serious bodily injury. Schmidt's criminal history reflects poorly on his character. *See Heyen v. State*, 936 N.E.2d 294, 305 (Ind.Ct.App.2010) (extensive criminal history reflects poorly on offender's character).

■ In addition to his other convictions, Schmidt has been arrested on a variety of charges: attempted armed robbery, attempted vehicle theft, dealing in a sawed off shotgun, possession of marijuana, fleeing from a law enforcement, resisting law enforcement, criminal recklessness, failure to stop after accident resulting in bodily injury, failure to stop after accident, operating a motor vehicle never being licensed, criminal mischief, and three charges of battery resulting in bodily injury. While we do not consider a history of arrest evidence of criminal history, "a record of arrest, particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind.2005). Schmidt's convictions and arrest history reflect a pattern of disdain for the law, we cannot hold the sentence is inappropriate in light of his character.

Regarding the nature of the offense, we find Schmidt's crime particularly unsettling. Schmidt entered A.C.'s house through an open window. He threatened to rape A.C. and to murder A.C. and Ward. Schmidt repeatedly bound A.C. during the crime, and he beat and repeatedly kicked her while she was bound naked on the floor. *See White v. State*, 849 N.E.2d 735, 744 (Ind.Ct.App.2006) (nature of the offense was worse when the defendant shot a victim lying helpless on the floor), *trans. denied. See also Akard v. State*, 937 N.E.2d 811, 813 (Ind.2010) (crime was "heinous" and "despicable" where the victim was bound, beaten, and raped for a period of several hours). As the circumstances surrounding this crime were more egregious than contemplated by the material elements of the offense, Schmidt's sentence is not inappropriate based on the nature of the offense.[7]

---

**7.** Schmidt also argues there are "double jeopardy implications" from the increase of the felony from Class D to Class C felony criminal confinement. (Appellant's Br. at 13.) Indeed, "[w]here a criminal statute provides for the elevation of a charge to a more serious crime based upon an additional element, the Richardson double jeopardy analysis applies."

*Walker v. State*, 758 N.E.2d 563, 565 (Ind.Ct. App.2001), *trans. denied.; see also Richardson v. State*, 717 N.E.2d 32, 56 (Ind.1999) (Sullivan, J., concurring) ("to the extent that a defendant's conviction for one crime is enhanced for engaging in particular additional behavior or causing particular additional harm, that behavior or harm cannot also be

As Schmidt's sentence is not inappropriate based on his character or the nature of the offense, we decline to revise it.

## CONCLUSION

There was ample evidence to support Schmidt's conviction and Schmidt has not demonstrated his sentence is inappropriate. Accordingly, we affirm.

Affirmed.

BAKER, J., and BRADFORD, J., concur.

used as an enhancement of a separate crime" except "where separate victims are involved or the behavior or harm that is the basis of the enhancement is distinct and separate").

Nevertheless, while it is impermissible for the trial court to use an element of the crime as an aggravator in sentencing, it is permissible for it to use the specific circumstances by which the crime was committed. *Stone v. State*, 727 N.E.2d 33, 37 (Ind.Ct.App.2000). Even if the trial court improperly considered the bodily injury to the victim, Schmidt's sentence is still appropriate because the trial court found other grounds to support the sentence:

"What I am concerned about is that you have an extensive criminal history and you have an extensive juvenile history ... and a number of your offenses were substance offenses and there was a notable number of offenses that were crimes of violence against other people and this was another in that line of cases where you committed an act of violence against another person and in this case the victim was the mother of your child. ... It appears you've opted to be a career criminal."

(Sent.Tr. at 21–22.)