**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**KELVIN LEE HEYEN**
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KELVIN LEE HEYEN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 84A01-1207-PC-345 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable John T. Roach, Judge
Cause No. 84D01-1101-PC-24

**August 13, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Kelvin Heyen appeals the denial of his petition for post-conviction relief. We affirm.

## Issues

Heyen raises seven issues, which we consolidate and restate as:

I.    whether the purported newly discovered evidence mandates a new trial; and

II.   whether he received ineffective assistance of appellate counsel.

## Facts

The relevant facts are:

On April 24, 2007, Detective Karen Cross (Detective Cross), an officer with the Vigo County Sheriff's Department and a member of the Vigo County Drug Task Force, arranged a controlled methamphetamine buy from Heyen with the help of confidential informant # 174 (CI) at a predetermined location. Before the controlled buy, Detective Paul Hartzler (Detective Hartzler) searched the CI and the CI's car, which revealed that he did not have any contraband on him, and then wired him with an audio video recorder. The Detectives gave the CI $50, which had been photocopied, and instructed him to purchase half a gram of methamphetamine. Detectives then followed the CI to 3071 Old Paris Road in West Terre Haute, Indiana. While under audio video surveillance, the CI exchanged the money provided by the Detectives for a baggie containing a white substance, which later tested to be .38 grams of methamphetamine.

After the controlled buy, Detective Cross reviewed the videotape and identified Heyen as the person talking with the CI. Additionally, Detective Cross completed a background investigation on Heyen and discovered that he had prior felony convictions relating to controlled substances. . . .

2

* * * * *

On August 13, 2007, the State filed an Information charging Heyen with Count I, dealing in methamphetamine, a Class B felony, I.C. § 35-48-4-1.1 and Count II, an habitual substance offender, I.C. § 35-50-2-10. On December 1, 2009, the State amended the habitual substance offender charge to an habitual offender charge. On December 15-16, 2009, a two-day jury trial was held. The jury found Heyen guilty as charged. On January 27, 2010, a sentencing hearing was held and the trial court sentenced Heyen to ten years for Count I and enhanced the sentence by fourteen years because of the habitual offender finding for a total of twenty-four years.

Heyen v. State, 936 N.E.2d 294, 298-99 (Ind. Ct. App. 2010), trans. denied. On direct appeal, Heyen raised issues related to the admission of evidence, the disclosure of the CI's identity, the sufficiency of the evidence, ineffective assistance of trial counsel, and his sentence. We affirmed the conviction, the habitual offender finding, and the sentence. See id. at 306.

On December 15, 2010, Heyen filed a petition for post-conviction relief.[1] Although counsel was appointed to represent Heyen, he elected to proceed pro se and requested that counsel withdraw from the case, which was ordered on April 8, 2011. The State responded to Heyen's petition, and Heyen and the State submitted evidence for the post-conviction court's consideration. On March 29, 2012, an evidentiary hearing was conducted.

On May 25, 2012, the post-conviction court denied Heyen's petition. In its order, the post-conviction court found in part:

---

[1] Heyen did not include his post-conviction relief petition in his appendix.

3

20.    Petitioner's entire focus at the evidentiary hearing was on a re-trial of issues already resolved in the criminal proceeding. He attempted to cross-examine the Vigo County Drug Task Force Detectives who testified at trial, attempting to call into question the sufficiency and credibility of the controlled buy transaction.

21.    Petitioner also called Ron Prouse to testify. Ron Prouse is the CI who purchased methamphetamine from petitioner and who signed the Prouse Letter, which was submitted to the trial judge after the trial. The Prouse Letter was included in petitioner's evidentiary submissions.

22.    Ron Prouse was not a credible witness at the evidentiary hearing. He admitted to having a faulty memory both due to his longstanding physical illnesses and due to his past drug usage. While he denied being a CI, he did acknowledge he signed the CI Agreement.

23.    With respect to the Prouse Letter, Ron Prouse testified that he never wrote that letter, and never said the words contained therein. He testified he was pressured into signing the letter by petitioner's girlfriend and sister. Ron Prouse further testified he was afraid not to sign the letter and did so to stop being harassed.

24.    Petitioner called Attorney Christopher Shema to testify. When Attorney Shema informed petitioner he may be waiving attorney-client privilege by his questions, petitioner declined to put on any testimony from Attorney Shema.

25.    Petitioner did not call his appellate counsel, Attorney Mark Watson.[2]

26.    The voluminous filings in this case are consistent with petitioner's attempts at the evidentiary hearing to re-litigate his criminal charges. He levies attacks on the integrity of the controlled buy, the credibility of the CI, and on the ultimate finding of the jury that he engaged in a drug transaction with the CI. Petitioner even acknowledges that he is shown on the videotape with the CI exchanging methamphetamine and

---

[2] Apparently, Heyen's subpoena to Watson was returned because Watson was no longer at that address.

> asking the CI if he wants change due to the weight of the drugs. However, petitioner argues the drugs were "mere crumbs," that no money was exchanged and that he only asked about change because of the way the CI held out the money.

P-CR App. p. 4. The post-conviction court concluded that the Prouse Letter was not newly discovered evidence requiring a new trial, that Heyen waived various claims, that other claims were barred because they had been addressed on direct appeal, that Heyen failed to prove his claim of ineffective assistance of appellate counsel, and that he did not carry his burden of proof on other claims "[s]mattered throughout petitioner's copious filings[.]" Id. at 9. Heyen now appeals.

**Analysis**

Generally, the completion of the direct appeal process closes the door to a defendant's claims of error in conviction or sentencing. Pruitt v. State, 903 N.E.2d 899, 905 (Ind. 2009). However, defendants whose appeals have been rejected are allowed to raise a narrow set of claims through a petition for post-conviction relief. Id. (citing Ind. Post-Conviction Rule 1(1)). "The range of relief provided under the post-conviction rules is limited to 'issues that were not known at the time of the original trial or that were not available on direct appeal.'" State v. Brunner, 947 N.E.2d 411, 414 (Ind. 2011), (quoting Ben-Yisrayl v. State, 738 N.E.2d 253, 258 (Ind. 2000), cert. denied). The purpose of post-conviction proceedings is to give a petitioner an opportunity to raise issues that were unknown or unavailable to the petitioner at the time of his or her original appeal. Id.

5

A post-conviction court must make findings of fact and conclusions of law on all issues presented in the petition. Pruitt, 903 N.E.2d at 905 (citing P-C.R. 1(6)). The findings must be supported by the facts, and the conclusions must be supported by the law. Id. "Our review on appeal is limited to these findings and conclusions." Id.

The petitioner bears the burden of proof, and an unsuccessful petitioner appeals from a negative judgment. Id. A petitioner appealing from a negative judgment must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. Id. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion and the post-conviction court has reached the opposite conclusion. Id.

## I. Newly Discovered Evidence

Heyen argues that so much time passed between the controlled buy and the trial that he could not recall who the CI might have been. According to Heyen, it was not until the day of sentencing, when a letter was produced by Ron Prouse identifying himself as the CI, that Heyen's memory was sparked regarding the CI's identity. Heyen argues Prouse's testimony is newly discovered evidence that mandates a new trial.[3]

As our supreme court has explained:

---

[3] The post-conviction court addressed the issue as whether Prouse's letter was newly discovered evidence that required a new trial. On appeal, Heyen clarifies that his argument is not based on the discovery of Prouse's letter but on the discovery of Prouse's identity as the CI. Without the post-conviction relief petition, we are unable to determine how the issue was framed to the post-conviction court. Regardless, in the letter and in his post-conviction relief hearing testimony, Prouse denied purchasing drugs from Heyen, and we review Heyen's claim of newly discovered evidence based on that premise.

6

new evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

Carter v. State, 738 N.E.2d 665, 671 (Ind. 2000). These factors are analyzed with care, as the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized. Id.

First, it is not clear that Prouse's identity was not discovered until after the trial. On direct appeal, we addressed a challenge to the trial court's denial of Heyen's request to compel the identity of the CI and explained:

> As noted by the State and based on the evidence, it is clear from audio video tapes admitted into evidence as State's Exhibit's 3A and B that Heyen knew the identity of the CI. The CI knew the location of Heyen's residence without guidance from the Detectives. Additionally, during the transaction, Heyen and the CI discussed many mutual acquaintances and at one point, Heyen commented that the CI was "a good dude." (State's Exh. 3B). Therefore, based on their familiar interactions with each other, we conclude that Heyen has not shown that the CI's identity was unknown to him and any refusal by the trial court to disclose his identity or not to allow him to call the CI as a witness was harmless error.

Heyen, 936 N.E.2d at 301. This is consistent with Prouse's testimony at the post-conviction relief hearing that he met Heyen through a mutual drug acquaintance and that he knew of Heyen for three or four months before Heyen went to jail. Further, the video of the transaction shows that Prouse was at Heyen's house for approximately twenty

7

minutes and that the two men spoke casually about a mutual acquaintance and cars. Thus, Heyen has not shown that Prouse's identity was discovered after trial.

Further, Heyen has not established that Prouse's testimony would have been credible. Specifically, the post-conviction court found that Prouse was not a credible witness because of his admission that his memory was faulty due to his longstanding physical illnesses and past drug use. The post-conviction court concluded, "[t]he Prouse Letter, and Ron Prouse's recitation of its content at the evidentiary hearing, is simply not believable." P-CR App. p. 6.

Finally, in light of the police officers' testimony about the controlled buy, the video of the transaction, and the CI agreement signed by Prouse, we are not convinced that Prouse's testimony denying that he bought drugs from Heyen would probably produce a different result at trial. Accordingly, Heyen has not established that the post-conviction court erroneously concluded that a new trial was not required.

Relying on the post-conviction court's finding that Prouse was not a credible witness, Heyen also asks us to suppress any evidence produced by Prouse because it cannot be used to establish probable cause to support his arrest. However, Heyen's conviction was not based on the credibility of Prouse's post-conviction hearing testimony. Instead, Heyen's conviction was based on the evidence produced at trial, including the video footage of the transaction and the police officers' testimony about the controlled buy. This argument is unavailing.

## II. Ineffective Assistance of Appellate Counsel

Heyen raises several freestanding claims of error. These issues, however, were all available at the time of Heyen's direct appeal. Accordingly, to the extent they were not raised on direct appeal, they are waived. See Reed v. State, 856 N.E.2d 1189, 1194 (Ind. 2006) ("If an issue was known and available but not raised on appeal, it is waived."). To the extent they were raised on direct appeal, they are barred by the doctrine of res judicata. See id. ("If an issue was raised on direct appeal, but decided adversely to the petitioner, it is res judicata.").

Heyen also frames some of the issues as ineffective assistance of trial counsel claims. However, on direct appeal, Heyen argued that trial counsel was ineffective for failing to file a motion to suppress or to compel the disclosure of the CI. Accordingly, the issues of ineffective assistance of trial counsel are barred by res judicata. See Woods v. State, 701 N.E.2d 1208, 1220 (Ind. 1998) ("[I]f ineffective assistance of trial counsel is raised on direct appeal . . . the issue will be foreclosed from collateral review."), cert. denied; Bieghler v. State, 690 N.E.2d 188, 200-01 (Ind. 1997) (concluding that, where ineffective assistance of counsel was raised on direct appeal, new arguments about trial counsel's performance are not available because the earlier ruling that trial counsel was not ineffective is res judicata), cert. denied.

Because the freestanding claims and ineffective assistance of trial counsel claims are either waived or barred by res judicata, only the claims framed as ineffective assistance of appellate counsel were available in these post-conviction proceedings.[4]

---

[4] Heyen argues that many of his claims should not be barred by the doctrine of res judicata because "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance,

9

"Appellate counsel's performance, like trial counsel's performance, is governed by the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)." Hill v. State, 960 N.E.2d 141, 145 (Ind. 2012). To prevail on a claim of ineffective assistance of appellate counsel, Heyen must show that (1) appellate counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms and (2) there is a reasonable probability that, but for appellate counsel's errors, the result of the proceeding would have been different. See id.

"Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." Carter v. State, 929 N.E.2d 1276, 1278 (Ind. 2010). Most of Heyen's claims are based on appellate counsel's failure to raise certain issues. "Ineffectiveness is rarely found when the issue is failure to raise a claim on direct appeal." Taylor v. State, 717 N.E.2d 90, 94 (Ind. 1999). Because the strategic decision regarding which issues to raise on appeal is one of the most important decisions to be made by appellate counsel, appellate counsel's failure to raise a specific issue on direct appeal rarely constitutes ineffective assistance. Id. The Indiana Supreme Court has adopted a two-part test to evaluate the deficiency prong of these claims: (1) whether the unraised issues are significant and obvious from

---

although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work manifest injustice." State v. Huffman, 643 N.E.2d 899, 901 (Ind. 1994) (quotations and citations omitted). Heyen, however, has not established extraordinary circumstances that require us to revisit our decision on direct appeal. Further, Heyen argues that appellate counsel's failure to raise certain issues on direct appeal was fundamental error. To the extent such a claim is properly presented in this context, Heyen has not established that the purported errors constitute "clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." Clark v. State, 915 N.E.2d 126, 131 (Ind. 2009).

10

the face of the record; and (2) whether the unraised issues are "clearly stronger" than the raised issues. Bieghler, 690 N.E.2d at 194. If this analysis demonstrates deficient performance by counsel, the court then examines whether the issues that appellate counsel failed to raise "would have been clearly more likely to result in reversal or an order for a new trial." Id.

As for Heyen's claims that appellate counsel should have more effectively argued certain issues on direct appeal, these claims "must overcome the strongest presumption of adequate assistance." Bieghler, 690 N.E.2d at 196. "Judicial scrutiny of counsel's performance, already 'highly deferential,' Spranger v. State, 650 N.E.2d 1117, 1121 (Ind. 1995), is properly at its highest." Id. "Relief is only appropriate when the appellate court is confident it would have ruled differently." Id.

### A. Controlled Buy

Heyen argues that the reliability of the controlled buy is called into question by the purported failure to search and remove packages from the CI's car prior to the buy. In the video of the buy, a rattling sound can be heard while the CI is driving to Heyen's house. In response to a jury question about what the CI was eating as he drove to Heyen's house, Detective Karen Cross of the Vigo County Drug Task Force stated, "I'm not sure if he was eating or smoking. I heard some rattling of packages, I don't know." Trial Tr. p. 159. After further questioning on this issue, Detective Cross testified that she did not know if the packages were searched. Based on the premise that the vehicle was not properly searched as part of the protocol for a controlled buy, Heyen argues there was

11

not probable cause to support his arrest and appellate counsel was ineffective for failing to raise the issue on appeal.

However, after Detective Cross testified, Detective Paul Hartzler of the Vigo County Drug Task Force testified that he was primarily responsible for conducting the search of the CI and his car. Detective Hartzler described the protocol for searching a CI's car. He explained that if there are any bags or anything in the car, he removes them and puts them in his vehicle. He explained that if someone is a smoker, he removes all the cigarettes from the pack, checks each cigarette to make sure nothing is in it, and allows the CI to take two or three cigarettes. Detective Hartzler stated that he follows the same protocol in every case and that he did not find any narcotics, money, or contraband during his search of the CI's car. When questioned about what he does if he finds candy bars or bags of food, Detective Hartzler stated that he generally removes it and secures it in his car while the transaction is being conducted. Although Detective Hartzler could not recall whether he found any food in the CI's car during the search, he did remember the CI smoking.

Because of Detective Hartzler's extensive testimony regarding the protocol for searching a vehicle as part of every controlled buy, Heyen has not shown that the controlled buy was unreliable. As such, he has not established that this unraised issue was clearly stronger than the other issues raised on appeal. See Bieghler, 690 N.E.2d at 194. Further, the record shows that defense counsel did question Detective Hartzler about whether the protocol was used in this particular case, and Detective Hartzler could not specifically recall. As such, Heyen's claim that appellate counsel should have raised

12

the issue of defense counsel's failure to follow up is without merit, and this issue is not clearly stronger than the other issues raised on appeal. See id.

Heyen also argues that appellate counsel should have claimed trial counsel was ineffective for not arguing to the jury that, because the protocol was not followed and the CI was motivated by the hope of favorable treatment in another criminal matter, he hid the drugs in his car and gave them to the detectives to get out of trouble. Had appellate counsel raised such a claim, it would have been unavailing because trial counsel's performance did not fall below an objective standard of reasonableness.

Defense counsel did question Detective Hartzler about the protocol and removal of bags, and there is no evidence that protocol was not followed. Further, Detective Cross testified at trial that the CI offered to assist because he was in trouble in Illinois and, during cross-examination, Detective Cross agreed that the CI came to her "on a silver platter." Tr. p. 122. Trial counsel also elicited testimony that the CI received "some type of deal" in exchange for his assistance. Id. at 124. Because trial counsel did make the jury aware of the purported issues with the pre-buy search of the CI's car and the CI's motivation to help police, this would not have been a successful ineffective assistance of trial counsel claim, and appellate counsel was not ineffective for failing to raise this argument on appeal.

### B. Jury Instruction

Heyen argues that appellate counsel was ineffective for failing to challenge the trial court's refusal to tender three of his proposed jury instructions. On appeal, to establish that the trial court erroneously refused a tendered instruction, appellate counsel

13

would have had to show: "1) the instruction correctly states the law, 2) evidence supports the instruction, and 3) no other instructions cover the substance of the tendered instruction." Davidson v. State, 849 N.E.2d 591, 593 (Ind. 2006). Heyen, however, provides no analysis of whether the tendered instructions were correct statements of the law, were supported by the evidence, and were not covered by other instructions.[5] He, therefore, has not established that this issue was stronger than the other issues raised on appeal.

### C. CI's Identity

On direct appeal, Heyen argued that the trial court improperly denied trial counsel's request to disclose the CI's identity. Appellate counsel argued that the State failed to show a paramount interest in the nondisclosure of the CI's identity, that the State failed to disclose the CI's identity in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), and that the State's failure to disclose the CI's identity violated various constitutional rights, including his right to confrontation. We rejected these arguments and reasoned, "based on their familiar interactions with each other, we conclude that Heyen has not shown that the CI's identity was unknown to him and any refusal by the trial court to disclose his identity or not to allow him to call the CI as a witness was harmless error." Heyen, 936 N.E.2d at 301.

Heyen argues that appellate counsel should have more effectively argued that a Brady violation occurred and focuses on the State's failure to disclose the CI agreement

---

[5] In his reply brief, Heyen directs us to the pages of his direct appeal appendix that contain the tendered instructions and a paragraph of "general supporting authority." Direct Appeal App. pp. 161-65. This reference is untimely and insufficient to establish that the instructions were improperly rejected.

14

with Prouse. Because appellate counsel framed this argument generally—as the disclosure of the CI's identity—and we rejected it, we are not convinced that we would have decided the issue differently if it had been made based on the failure to disclose the CI agreement because it would have revealed the CI's identity. See Bieghler, 690 N.E.2d at 196.

Heyen also argues that appellate counsel should have more effectively argued that the failure to disclose the CI's identity denied him his Sixth Amendment right to confrontation.[6] Heyen's argument appears to be based on Crawford v. Washington, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004), in which the Supreme Court held, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." We have explained, however, that "the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" Williams v. State, 930 N.E.2d 602, 607 (Ind. Ct. App. 2010) (quoting Crawford, 541 U.S. at 59 n.9, 124 S. Ct. at 1369), trans. denied. "Thus, if a statement is either nontestimonial or nonhearsay, the federal Confrontation Clause will not bar its admissibility at trial." Id. (footnote omitted). Accordingly, we have rejected similar claims regarding the right to confront confidential informants. See Williams, 930 N.E.2d at 608 (holding that the confidential informant's recorded statements during a controlled buy were not offered by the State to prove the truth of those statements).

_____

[6] Although appellate counsel raised the confrontation issue generally, no specific Crawford argument was made.

Here, any statements made by the CI during the transaction were not offered to prove the truth of the matter asserted, but were offered to provide context for Heyen's statements and conduct. See id. Thus, even if appellate counsel had made a Crawford argument, it would not have been a basis for reversing Heyen's conviction on direct appeal.

### D. Habitual Offender Enhancement

The State initially alleged that Heyen was an habitual substance offender. Shortly before trial, the State amended the habitual substance offender allegation to a general habitual offender allegation. Heyen argues that trial counsel failed to object to the amendment and, upon being found to be an habitual offender, his sentence was enhanced by fourteen years as opposed to the additional three to eight years he would have faced if he was found to be an habitual substance offender. See Ind. Code § 35-50-2-10. Regardless of whether Heyen is arguing that appellate counsel should have raised this issue as a claim of ineffective assistance of trial counsel claim or as a freestanding claim of error, we are not persuaded that it would have been successful on appeal.

Our supreme court has explained, "[t]he habitual substance offender statute punishes repeat offenders whether the underlying convictions were misdemeanors or felonies, while the general habitual offender statute is reserved for criminals who have repeatedly been convicted of felonies." Hendrix v. State, 759 N.E.2d 1045, 1048 (Ind. 2001). "Where a defendant could be prosecuted under either the habitual offender statute or the habitual substance offender statute, the prosecutor has discretion to choose either statute." Id. at 1047. Thus, although the basis for the habitual offender enhancement was

16

two prior felony drug-related convictions, it was within the prosecutor's discretion to choose which enhancement applied. Because a challenge to the amendment by trial counsel would have been unsuccessful, Heyen has not shown that this unraised issue was clearly stronger than the other issues raised by appellate counsel.

## Conclusion

Heyen has not established that the post-conviction court erroneously denied his petition. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.