Michael Jason SURBER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A04–0707–CR–359.

Court of Appeals of Indiana.

April 10, 2008.

Transfer Denied May 29, 2008.

859

Douglas R. Long, Anderson, IN, Attorney for Appellant.

Steve Carter Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SHARPNACK, Judge.

Michael Jason Surber appeals his conviction and sentence for child molesting as a class A felony.[1] Surber raises five issues, which we restate as:

I.  Whether the trial court abused its discretion by admitting out of court statements made by the victim to her grandfather, a Child Services investigator, and a nurse and a videotaped interview with a detective;

II. Whether the prosecutor committed misconduct in his closing arguments that resulted in fundamental error;

III. Whether the trial court erred by instructing the jury that "any sexual penetration, however slight, may be sufficient to complete the crime of child molestation";

IV. Whether the evidence is sufficient to sustain Surber's conviction; and

V.  Whether Surber's thirty-six-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

The relevant facts follow. In 2006, Surber lived with his grandmother and his two daughters, five-year-old C.S. and four-year-old K.S. In August 2006, C.S. and K.S. spent the weekend with their maternal grandfather, Kenneth Douglas, and visited their eight-year-old half-brother, T.B.

Douglas discovered that, during the weekend, T.B. and C.S. went into a closet and T.B. "kissed [C.S.'s] private." Transcript at 60, 106. C.S. defended T.B. and said, "he's only doing what Daddy does." *Id.* at 106. C.S. told Douglas that "Daddy has hurt her down there between her legs" and that "he made her touch his peewee," and C.S. made "a stroking motion." *Id.*

Douglas contacted the police department, and Elizabeth Callen, an investigator with the Madison County Department of Child Services, talked to C.S. at her elementary school. C.S. told Callen that Surber had put his finger and his penis in her "private." *Id.* at 85–86. C.S. explained that "Daddy didn't do anything wrong because he was just helping me pee." *Id.* C.S. said that the incidents occurred when she was five and happened three times—"the first time ... at Uncle Mark's house," one time in "Daddy's bed," and one time in her room. *Id.* C.S. said that Surber did not touch her sister, K.S., because "she's only four (4) and Daddy said you don't do that until you're old enough to start school like me." *Id.* at 87.

Callen removed C.S. and K.S. from Surber and placed them in foster care. When Callen removed K.S. from Surber's home, she took Detective Kevin O'Donnell of the Indiana State Police with her. Detective O'Donnell explained to Surber why they were there, and Surber was shaking, very nervous, and would not make eye contact. Detective O'Donnell asked to set a time for a formal interview with Surber, but Surber kept asking Detective O'Donnell questions about examinations that would be performed on C.S. Detective O'Donnell gave the *Miranda* warnings to Surber, and Surber told Detective O'Donnell that the girls sometimes sleep with him and might have

---

1. Ind.Code § 35–42–4–3(a) (2004) (subsequently amended by Pub.L. No. 216–2007, § 42 (eff. July 1, 2007)).

accidentally touched his penis. When asked if he had inappropriately touched C.S., Surber responded, "not that he could remember but he would think and try to figure it out." *Id.* at 211.

Detective Heather McClain of the Anderson Police Department performed a videotaped forensic interview with C.S. three days after she was removed from Surber. C.S. told McClain that Surber "didn't do nothing" and "I really want to go home. He won't do it again." *Id.* at 145. C.S. explained that Surber put his fingers and his penis inside her privates. Surber told C.S. that "he has to do it to make [her] pee." *Id.* at 147. C.S. told McClain that it happened "[l]ike one time" when she was three years old. *Id.* at 158, 160.

Holly Renz, a nurse at Community Hospital, examined C.S. and found no evidence of physical harm. During the examination, C.S. said that her brother had kissed her "down there" but that no one else had touched her there. *Id.* at 196. While examining C.S.'s anus, C.S. said, "why are you . . . checking down here," and she explained that "her daddy doesn't touch her there." *Id.* Renz asked C.S. where Surber touched her, and C.S. pointed to her genital area. C.S. said that Surber touched her with his finger. Renz was not surprised by the lack of physical evidence because they do not find physical evidence of assault in 95% of the child sexual abuse cases.

The State charged Surber with child molesting as a class A felony for performing or submitting to sexual intercourse or deviate sexual conduct with C.S. Prior to the jury trial, a four-part child hearsay hearing was held on April 12, 2007, April 19, 2007, April 26, 2007, and May 2, 2007. Kenneth Douglas, Elizabeth Callen, Detective McClain, Holly Renz, and C.S. testified at the child hearsay hearings. C.S. attended and testified at the April 26, 2007, hearing. The trial court found that the time, content, and circumstances of the statements and videotaped statement provide sufficient indications of reliability and were admissible.

At the jury trial, C.S. testified that Surber "stuck his private in [her] private and then he . . . made [her] feel his private" and that Surber put his finger in her "private." *Id.* at 61, 63. C.S. testified that this happened "[i]n [her] room and one time in Daddy's room [and][i]n Uncle Mark's house once" when she was five years old. *Id.* at 61, 65. C.S. testified that Surber touched her to help her "pee." *Id.* at 62. Over Surber's hearsay objections, Douglas, Callen, and Renz also testified regarding C.S.'s statements to them and the videotaped interview with Detective McClain was shown.

Surber testified at the trial that C.S. was "very confused," needed counseling due to the death of her mother, and had potty training problems. *Id.* at 267, 275, 278. Surber also claimed that Detective O'Donnell "misunderstood" his comments when he was arrested. *Id.* at 270, 276. Over Surber's objection, the trial court instructed the jury that: "[a]ny sexual penetration, however slight, may be sufficient to complete the crime of child molestation." Appellant's Appendix at 59; Transcript at 327. The jury found Surber guilty as charged. At the sentencing hearing, the trial court found no mitigators and one aggravator, Surber's "misdemeanor convictions and violations of probation and conditions of deferral." Transcript at 355. The trial court sentenced Surber to thirty-six years in the Indiana Department of Correction.

## I.

The first issue is whether the trial court abused its discretion by admitting out of

court statements made by C.S. to Douglas, Callen, and Nurse Renz and the videotaped interview with Detective McClain. We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Noojin v. State,* 730 N.E.2d 672, 676 (Ind.2000). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State,* 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied.*

Surber argues that C.S.'s out of court statements were inadmissible because: (1) the statements were not reliable; (2) the repeated admission of C.S.'s out of court statements resulted in a drum beat repetition; (3) C.S. did not attend all four parts of the child hearsay hearing; and (4) admission of the statements violated Surber's rights under the Sixth Amendment's confrontation clause. We will address each argument separately.

1. *Reliability of Statements.*

■ Ind.Code § 35–37–4–6, commonly referred to as the protected persons statute, allows hearsay statements of child sex crime victims, among others, to be admissible at trial when certain conditions are met. The statute provides:

(d) A statement or videotape that:

(1) is made by a person who at the time of trial is a protected person;[2]

(2) concerns an act that is a material element of an offense listed in subsection (a) or (b) that was allegedly committed against the person; and

(3) is not otherwise admissible in evidence;

is admissible in evidence in a criminal action for an offense listed in subsection (a) or (b) if the requirements of subsection (e) are met.

(e) A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) or (b) if, after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:

(1) The court finds, in a hearing:

(A) conducted outside the presence of the jury; and

(B) attended by the protected person; that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.

(2) The protected person:

(A) testifies at the trial; or

(B) is found by the court to be unavailable as a witness . . .

Ind.Code § 35–37–4–6.

■ The trial court found that the time, content, and circumstances of the statements and videotape provided sufficient indications of reliability, but Surber argues that the trial court abused its discretion. Considerations in making the reliability determination under Ind.Code § 35–37–4–6 include: (1) the time and circumstances of the statement, (2) whether there was significant opportunity for coaching, (3) the nature of the questioning, (4) whether there was a motive to fabricate, (5) use of age appropriate terminology, and (6) spontaneity and repetition. *Trujillo v. State,* 806 N.E.2d 317, 325 (Ind. Ct.App.2004). Lengthy and stressful interviews or examinations preceding the

**2.** It is undisputed that C.S. is a protected person because she is less than fourteen years of age. *See* Ind.Code § 35–37–4–6(c)(1).

statement may cast doubt on the reliability of the statement or videotape sufficient to preclude its admission. *Id.*

In support of his argument that C.S.'s statements were not reliable, Surber relies upon *Carpenter v. State,* 786 N.E.2d 696 (Ind.2003). There, the Indiana Supreme Court concluded that a three-year-old girl's statements to her mother and grandfather and a videotaped interview failed to exhibit sufficient indications of reliability as the protected person statute requires. 786 N.E.2d at 704. The court emphasized the combination of the following circumstances: "there was no indication that [the girl's] statements were made close in time to the alleged molestations, the statements themselves were not sufficiently close in time to each other to prevent implantation or cleansing, and [the girl] was unable to distinguish between truth and falsehood." *Id.*

We conclude that *Carpenter* is distinguishable from this case. Here, it was unclear exactly when the molestations occurred, but all of C. S.'s statements were made relatively close in time to each other. C.S.'s statements to Douglas were spontaneous, and some of her statements to Nurse Renz were spontaneous. C.S. used age-appropriate terminology and had no motive to fabricate. Moreover, the trial court found that C.S. was able to distinguish between truth and falsehood, and C.S. was five years old at the time she made the statements. Surber contends that "there was a certain amount of leading in the questions" asked by McClain, Callen, and Renz, and that there was opportunity for coaching. Appellant's Brief at 24. Surber does not identify the alleged leading questioning, and our review of the record does not reveal suggestive questioning or an indication of coaching. We conclude that the trial court did not abuse its discretion by concluding that the time, content, and circumstances of the statements and videotape provided sufficient indications of reliability. *See, e.g., M.T. v. State,* 787 N.E.2d 509, 513 (Ind.Ct.App. 2003) ("The trial court did not therefore abuse its discretion when it found that [the victim's] out of court statements contained sufficient indicia of reliability and were admissible.")

### 2. *Drum Beat Repetition.*

■■ Surber appears to argue that the trial court abused its discretion by admitting the videotape and the statements because the videotape and the statements resulted in a drumbeat of repetition that prejudiced the jury. Surber did not object on the basis that the testimony and videotape were cumulative. "As a general rule, failure to object at trial results in waiver of an issue for purposes of appeal." *Washington v. State,* 840 N.E.2d 873, 886 (Ind. Ct.App.2006), *trans. denied.* Thus, Surber's argument is waived.

Waiver notwithstanding, we conclude that any error was harmless. Surber argues his case is like *Stone v. State,* 536 N.E.2d 534, 541 (Ind.Ct.App.1989), *trans. denied,* in which we reversed a conviction for child molesting because the State used multiple witnesses to produce a "drum beat repetition" of the child victim's story. In *Stone,* the State had four adult witnesses testify to out-of-court statements made by the child, and at least one of the adults testified before the child took the stand. 536 N.E.2d at 537. The child's story was repeated a total of seven times during the trial. *Id.* We found that the child's credibility "became increasingly unimpeachable as each adult added his or her personal eloquence, maturity, emotion, and professionalism to [the child's] out-of-court statements," so that the "presumption of innocence was overcome long before [Stone] got to the stand." *Id.* at 540.

*Stone* is distinguishable from this case. Here, C.S.'s statements were repeated by Douglas, Callen, and Renz, and the videotaped interview with Detective McClain was played. However, C.S. was the first witness to testify and was subject to cross examination. Moreover, Douglas, Callen, and Renz's testimony was brief, consistent with, and did not elaborate upon C.S.'s testimony. We conclude that any error was harmless. *See, e.g., Craig v. State,* 630 N.E.2d 207, 211–212 (Ind.1994) (holding that the improper admission of hearsay testimony of two witnesses that "confirmed but did not elaborate upon" the victim's testimony would have had only minor impact on the jury because there was little to undermine the victim's credibility); *McGrew v. State,* 673 N.E.2d 787, 796 (Ind. Ct.App.1996) (holding that the improper admission of hearsay testimony from two witnesses whose testimony was "brief and consistent with" the victim's testimony did not "constitute drumbeat repetition of the victim's statements"), *summarily affirmed* by 682 N.E.2d 1289, 1292 (Ind.1997).

### 3. *Attendance at Child Hearsay Hearing.*

■ As noted above, one condition to the admissibility of the victim's out of court statements and videotaped statements is that the trial court must find, "in a hearing conducted . . . outside the presence of the jury and . . . *attended by the protected person,* that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability." Ind.Code § 35–37–4–6(e)(1) (emphasis added). Surber argues that C.S.'s statements and the videotape were not admissible because C.S. attended only one day of the four-part child hearsay hearing.

First, Surber did not object to the admission of C.S.'s statements or the videotape on this basis, and the argument is waived. *See Washington,* 840 N.E.2d at 886. Second, Surber cites no authority for this contention. C.S. testified at the portion of the child hearsay hearing that she attended and was subject to cross examination by Surber's counsel. Other witnesses, including Douglas, Callen, McClain, and Renz, testified at the remaining portions of the hearing. There is no indication in the statute, Ind.Code § 35–37–4–6, that C.S. was required to attend every minute of the child hearsay hearing. In fact, we cannot see how requiring five-year-old C.S. to attend the entire hearing and allowing C.S. to hear the testimony of the other witnesses concerning her prior statements would advance the goals of the protected persons statute. We conclude that Surber's argument fails.

### 4. *Confrontation Clause.*

■ Surber argues that the trial court committed fundamental error by violating his Sixth Amendment right to confrontation as discussed in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford,* the United States Supreme Court held that the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement was testimonial and (2) the declarant is unavailable and the defendant lacked a prior opportunity for cross-examination. *Howard v. State,* 853 N.E.2d 461, 465 (Ind.2006). The Court emphasized that if testimonial evidence is at issue, then "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* (quoting *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374).

C.S. was found competent to testify, was made available for cross-examination, and did in fact testify at trial. Because C.S. testified and was cross examined, the rule announced in *Crawford* is simply not appli-

cable here. Surber's Sixth Amendment confrontation rights were not violated. *See, e.g., Agilera v. State,* 862 N.E.2d 298, 306 (Ind.Ct.App.2007) (holding that the defendant's Sixth Amendment confrontation clause rights were not violated by the admission of the child victim's statements to her mother, grandmother, a detective, and a forensic investigator), *trans. denied.*

## II.

The next issue is whether the prosecutor committed misconduct in his closing arguments that resulted in fundamental error. Surber argues that several of the deputy prosecutor's comments in closing arguments were misconduct. Recognizing that he did not object to the comments, Surber argues that the comments amounted to fundamental error.

■■■ In reviewing a properly preserved claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Cooper v. State,* 854 N.E.2d 831, 835 (Ind.2006). Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. *Id.* The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

■■■ Where, as here, a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim. *Id.* More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Id.* Fundamental error is an extremely

narrow exception that allows a defendant to avoid waiver of an issue. *Id.* It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process ... present[ing] an undeniable and substantial potential for harm." *Id.*

■■■ Surber argues that the following comments during closing argument resulted in fundamental error:

> In order to return a verdict of not guilty, what you would have to say is [C.S. is] not telling the truth. That Beth Callen doesn't know what she's doing. That Detective McClain [doesn't] know what she's doing. Both of them trained individuals.

\* \* \* \* \* \*

> If you feel that he didn't do it, if you feel that [C.S.] is not telling the truth, by all means, I've wasted your time here in these past couple of days. And send [C.S.] back to her father.

\* \* \* \* \* \*

> You had the chance to evaluate [Surber's] testimony. How many times was he hemming and hawing about what he said, the admissions he made to Detective O'Donnell? Sounds like a guilty man to me. Someone who himself knows what he did was wrong but just cannot bring himself to man up and admit it.

\* \* \* \* \* \*

> And I'm counting on you to come back with a verdict of guilty. [C.S.] is counting on you. That's what the evidence shows. You should be firmly convinced at this point. You ought to be insulted that he would get on the stand and tell you stories like that.

\*   \*   \*   \*   \*   \*

Well, if she's not lying, she's telling the truth. You have the opportunity to observe her testimony, not only on video but live and the opportunity to observe his testimony. Who do you believe? Who[ ] made sense?

Transcript at 308–310, 322.

These comments as a whole encourage the jury to find that C.S. was telling the truth while Surber was lying. In *Cooper*, the Indiana Supreme Court addressed a similar argument and held:

> [A] prosecutor does not necessarily engage in misconduct by characterizing a defendant as a liar. In *Hobson v. State*, the "prosecutor gave personal opinions as to the truthfulness of witnesses" when the prosecutor stated to the jury during closing arguments, "I warned you that [the defendants] are liars." 675 N.E.2d 1090, 1095 (Ind.1996). This Court noted that where evidence introduced at trial indicates that either the defendant was lying or that other witnesses were lying, comments by the prosecutor which merely "pointed out the incongruities in the testimony presented at trial, concluded that someone must not be testifying truthfully, and invited the jury to determine which witness was telling the truth" did not constitute misconduct. *Id.* at 1096. Rather, "a prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence." *Lopez v. State*, 527 N.E.2d 1119, 1127 (Ind.1988).

*Cooper*, 854 N.E.2d at 836.

In this case, the jury was presented with C.S.'s claims that Surber had molested her against Surber's claims that C.S. was "very confused," needed counseling due to the death of her mother, and had potty training problems. Transcript at 267, 275, 278. Surber also claimed that Detective

O'Donnell "misunderstood" his comments when he was arrested. *Id.* at 270, 276. Given the evidence presented and Surber's arguments at the trial, we conclude that the prosecutor did not commit misconduct by arguing that C.S. was telling the truth and Surber was lying. *See, e.g., Cooper*, 854 N.E.2d at 837.

■■■ As for the prosecutor's comments regarding Callen and Detective McClain knowing what they were doing and sending C.S. back to Surber, these comments "at least approached if not crossed the line of improper commentary." *Id.* However, even assuming misconduct, we are not persuaded that two isolated comments during the prosecutor's closing argument created "an undeniable and substantial potential for harm." *Id.* at 835. We note that the jury was instructed that the attorney's final arguments "are not evidence." Appellant's Appendix at 51. Given the evidence presented at the trial and the jury instructions, we conclude that any prejudicial impact caused by these isolated comments was minimal. *See, e.g., McCann v. State*, 742 N.E.2d 998, 1003 (Ind.Ct.App.2001) ("While considered as a whole the prosecutor's closing statements may have pushed the bounds of zealous advocacy, we find nothing about the statements to be so egregious as to rise to fundamental error."), *summarily aff'd in pertinent part by McCann v. State*, 749 N.E.2d 1116 (Ind. 2001).

### III.

■■■ The next issue is whether the trial court erred in one of its instructions to the jury. Over Surber's objection, the trial court instructed the jury that: "[a]ny sexual penetration, however slight, may be sufficient to complete the crime of child molestation." Appellant's Appendix at 59; Transcript at 327. The purpose of an in-

struction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Overstreet v. State,* 783 N.E.2d 1140, 1163 (Ind.2003), *cert. denied,* 540 U.S. 1150, 124 S.Ct. 1145, 157 L.Ed.2d 1044 (2004). Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. *Id.* at 1163–1164. We consider the instructions "as a whole and in reference to each other" and do not reverse the trial court "for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law in the case." *Helsley v. State,* 809 N.E.2d 292, 303 (Ind.2004). An error in a particular instruction results in reversal only where the entire body of instructions misleads the jury as to the law in the case. *Id.*

Surber argues that the instruction is inaccurate because it implies that only sexual penetration is necessary to prove child molesting and the other elements of the offense are not mentioned. The Indiana Supreme Court used this language in *Spurlock v. State,* 675 N.E.2d 312, 315 (Ind.1996) ("Proof of the slightest penetration is sufficient to sustain convictions for child molesting and incest."). However, as the court noted in *Ludy v. State,* "[t]he mere fact that certain language or expression [is] used in the opinions of this Court to reach its final conclusion does not make it proper language for instructions to a jury." 784 N.E.2d 459, 461 (Ind.2003). Surber argues that language approved in *Ives v. State* is more appropriate for an instruction. In *Ives,* the Indiana Supreme Court approved an instruction that provided: "You are instructed that any sexual penetration, however slight, is sufficient to complete the crime of rape, *if the other elements are proved."* 275 Ind. 535, 541–542, 418 N.E.2d 220, 224 (Ind.1981) (emphasis added).

Even assuming that it would have been more appropriate to include the phrase, "if the other elements are proved," in the instruction, we cannot say that reversible error occurred. The jury was also instructed regarding the elements of child molesting as follows:

> To convict the defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> The defendant
>
> (1) knowingly
>
> (2) performed or submitted to sexual intercourse or deviate sexual conduct with [C.S.]
>
> (3) when [C.S.] was a child under fourteen (14) years of age.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty.
>
> If the State did prove each element, beyond a reasonable doubt, you should find the defendant guilty of Child Molesting, Class B Felony.
>
> Further, to convict the defendant of a Class A Felony, the State must also prove, beyond a reasonable doubt, that the defendant was at least twenty-one (21) years of age, at the time of the offense.

Appellant's Appendix at 56; Transcript at 326–327. Next, the trial court instructed the jury that sexual intercourse "means an act that includes any penetration of the female sex organ by the male sex organ" and that deviate sexual conduct "is defined as the penetration of the sex organ or anus of a person by an object." Appellant's Appendix at 57–58; Transcript at 327. The trial court then instructed the jury that "[a] finger may be considered an 'object' for purposes of deviate sexual conduct." Appellant's Appendix at 58; Transcript at 327.

Finally, the trial court also instructed the jury that:

> [T]he burden rests upon the State of Indiana to prove to each of you, beyond a reasonable doubt, every essential element of the crime charged.

> \*   \*   \*   \*   \*   \*

> To overcome the presumption of innocence, the State must prove the defendant guilty of each essential element of the crime charged, beyond a reasonable doubt.

> \*   \*   \*   \*   \*   \*

> You are to consider all of the instructions as a whole and are to regard each with the others given to you. Do not single out any certain sentence or any individual point or instruction and ignore the others.

Appellant's Appendix at 61, 62, 73; Transcript at 327–328, 332.

We conclude that the instructions as a whole did not mislead the jury as to the elements of the offense of child molesting. The jury was instructed regarding the elements of the offense and was repeatedly instructed that the State was required to prove each element of the offense beyond a reasonable doubt. Any error in the penetration instruction did not result in reversible error. *See, e.g., Lewis v. State,* 759 N.E.2d 1077, 1083 (Ind.Ct.App.2001) (holding that, although the instruction at issue "could have been worded more specifically," the jury instructions as a whole did not mislead the jury as to the law), *trans. denied.*

### IV.

The next issue is whether the evidence is sufficient to sustain Surber's conviction for child molesting as a class A felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

The offense of child molesting as a class A felony is governed by Ind.Code § 35–42–4–3(a), which, in relevant part, provides: "A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if: (1) it is committed by a person at least twenty-one (21) years of age...."

Surber argues that C.S.'s testimony is "incredibly dubious or inherently improbable." Appellant's Brief at 36. Surber relies upon inconsistencies in C.S.'s testimony compared to her statements to Detective McClain and Nurse Renz. Surber also notes that there was no physical evidence of molestation.

Appellate courts may apply the "incredible dubiosity" rule to impinge upon a jury's function to judge the credibility of a witness. *Fajardo v. State,* 859 N.E.2d 1201, 1208 (Ind.2007). Under the incredible dubiosity rule, "[i]f a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed." *Id.* "This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Id.* "Application of this rule is rare and the standard to be applied is whether the testimony is so

incredibly dubious or inherently improbable that no reasonable person could believe it." *Id.*

Having reviewed the record, we find that the testimony of six-year-old C.S. was not so incredibly dubious or inherently improbable that no reasonable person could believe it. While there are inconsistencies between some of C.S.'s statements, the inconsistencies "are appropriate to the circumstances presented, the age of the witness, and the passage of time between the incident and the time of her statements and testimony." *Id.* at 1209. Based upon the facts detailed above, we conclude that the State presented evidence of probative value from which a reasonable jury could have found Surber guilty of child molesting as a class A felony. *See, e.g., id.* (holding that the incredible dubiosity rule was inapplicable and affirming the defendant's conviction for child molesting).

## V.

■ The final issue is whether Surber's thirty-six-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006). Surber argues that his thirty-six-year sentence, which is only six years above the advisory sentence, should be reduced.

Our review of the nature of the offense reveals that Surber began molesting five-year-old C.S. after her mother died, and he was her primary caregiver. Surber told

C.S. that he touched her to help her "pee." Transcript at 62. C.S. said that Surber did not touch her younger sister, K.S., because "she's only four (4) and Daddy said you don't do that until you're old enough to start school like me." *Id.* at 87.

Our review of the character of the offender reveals that Surber has misdemeanor convictions for minor consumption, possession of marijuana, possession of paraphernalia, battery, operating while intoxicated, and resisting law enforcement. Surber violated his probation in 1996 and twice in 2004.

After due consideration of the trial court's decision, we cannot say that the thirty-six-year sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender. *See, e.g., McCoy v. State,* 856 N.E.2d 1259, 1264 (Ind.Ct.App.2006) (holding that the defendant's forty-five-year sentence for molesting his stepdaughter was not inappropriate).

For the foregoing reasons, we affirm Surber's conviction for child molesting as a class A felony.

Affirmed.

BARNES, J. and VAIDIK, J. concur.