**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DONALD C. SWANSON, JR.**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAYMOND WARREN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1106-CR-325 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D06-1011-FA-59

**March 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Raymond Warren appeals his three convictions for child molesting as class A felonies and one conviction for child molesting as a class C felony.[1] Warren raises two issues, which we revise and restate as:

I.  Whether the court abused its discretion in admitting certain evidence; and

II.  Whether the evidence is sufficient to sustain his convictions.

We affirm.

The relevant facts follow. In the summer of 2009, K.W., who was born on October 30, 1997, lived with her mother and her younger brother C.W. in Fort Wayne, Indiana. K.W.'s mother was a hairstylist and worked during the day from about 8:00 a.m. until 5:00 or 6:00 p.m. While their mother was at work, K.W. and C.W. would stay at the house of Shatae, one of K.W.'s aunts. Warren lived with and was in a relationship with Shatae. K.W.'s mother or Shatae would typically drive K.W. and C.W. to and from Shatae's house. There were times that Shatae would leave for work and leave K.W. or K.W. and C.W. at the house with Warren.

About two weeks after K.W. finished her fifth grade year, Warren and K.W. were watching a movie alone at Shatae's house. During the movie, K.W. stated "how this person became all grown up so quick," and Warren told her that she was becoming a teenager. Transcript at 145. K.W. said that she was not old enough to become a teenager, and Warren said "come here" and directed K.W. to follow him to the bathroom. Id. at 146. Warren touched K.W. "in a lot of places that [she] never want[ed] to be

---

[1] Ind. Code § 35-42-4-3 (Supp. 2007).

touched" and used his finger to touch K.W.'s "[f]ront rear," which is the part of the body K.W. referred to as the part she uses for "[p]eeing." Id. at 147. Warren moved his finger on the outside and the inside of K.W., which felt "[w]eird horrible" to K.W. Id. at 149. When Warren stopped, he said "[s]ee, you are a teenager." Id.

On a separate occasion several days later, K.W. had been playing outside and went inside to take a shower. Warren went into the bathroom and stared at K.W. K.W. stated that she wanted privacy, and Warren left the room. After her shower, K.W. went into the master bedroom to dress, and Warren then entered the room. K.W. said that she was not dressed, and Warren exited the room but K.W. saw Warren peek through the crack in the door. Warren then opened the door and entered the room when K.W. was wearing only a top, retrieved cocoa butter out of a drawer near his side of the bed, and applied the cocoa butter to both of K.W.'s thighs.

On another occasion, Warren asked K.W. to go the bathroom with him and said "something about hard" and that was the "only thing [K.W.] really understood." Id. at 161. K.W. understood that Warren "wanted [her] to see something." Id. at 162.

On or about July 2, 2009, Warren picked up K.W. and C.W. from their home, and they went to fly kites. Afterward, Warren, K.W., and C.W. went to Wal-Mart to obtain a movie and returned to Shatae and Warren's house. At some point while C.W. was playing in the detached garage, Warren told K.W. "to come here" and "directed [her] to the master bedroom." Id. at 157. Warren "told [K.W.] to lay down on the bed" and touched K.W.'s "front rear with his finger and after that it was with his tongue and then it was with his front rear." Id. at 158. When Warren touched K.W. with his finger and his

3

penis, it "hurt" and caused K.W. pain.  <u>Id.</u>  C.W. knocked on the back door of the house, and Warren stopped.

The day before she started sixth grade, K.W. called Warren to say that she thought she should tell someone about the incidents, and Warren told her not to tell anyone. K.W. spoke with Shatae and another of her aunts and "told them the whole story" but "pretended that it was a friend of [hers] that this had happened to and not [K.W.]." <u>Id.</u> at 164.

On New Year's Eve, when Warren was at K.W.'s house along with other family and friends, K.W. went upstairs to her room and wrote the following in her diary:

> New Years Eve day!
>
> I missed the count-down because [Warren] was here I don't want to be where he is.  He is ugly.  This is how it all started we were all watching rush hour and he said [] sit on my lap then he said you are a[] teenager I said no I am 11 . . . he took me to the bathroom and that happened it ended whe[n] he put his finger, mouth, [] and groin inside my you know what.  It is so sad I missed ch[r]istmas, and new years.  I am just going to say it he raped me!

State's Exhibit at 1.

K.W. also wrote a letter to Warren which she initially intended to mail but then decided not to send and kept it in her closet in an envelope.  The letter stated in part:

> Dear [Warren],
>
> I can't take this anymore I can't just act like it never happen [sic]. . . . you did it to me I cried and I cried a lot I was so scared. . . .  People asked me [if] I'm okay I am not my mom said "If there is anything you can tell me let me know."  I know you were trying to teach me some stuff [] But you went Over Board!  And one thing . . . Doing that is called Raping.

4

State's Exhibit at 2. The letter also stated "This is not a magical word you begged me," "There's a 33 years of difference," and in large letters "Sorry" and "I am telling On you." Id.

In April 2010, C.W. went into K.W.'s room to look for a pencil and saw her open diary by her dresser. C.W. read a page in the diary and called his mother and told her what he had read. C.W. and K.W.'s mother went home, read the diary, and spoke with K.W. who explained what Warren had done, and the police were contacted. K.W.'s mother took K.W. to the Fort Wayne Sexual Assault Treatment Center, and Sharon Robison, a sexual assault nurse examiner, spoke with K.W. K.W. stated to Robison that Warren had "put his finger, his mouth, and his front rear in her front rear." Transcript at 199. K.W. also indicated to Robison she did not have any bleeding but also "that it just hurt when he put his front rear in her front rear." Id.

On November 17, 2010, the State charged Warren with: Count I, child molesting as a class A felony for performing or submitting to deviate sexual conduct with K.W. by penetrating the female sex organ of K.W. with an object; Count II, child molesting as a class A felony for performing or submitting to deviate sexual conduct with K.W. by placing his mouth on the female sex organ of K.W.; Count III, child molesting as a class A felony for performing or submitting to sexual intercourse with K.W.; and Count IV, child molesting as a class C felony for performing or submitting to fondling or touching K.W. with the intent of arousing or satisfying the sexual desires of Warren or K.W. During the jury trial, the State presented evidence including among other things K.W.'s diary, the letter K.W. had written to Warren but never sent, photographs of the house

5

where the offenses occurred, and the testimony of K.W., K.W.'s mother, Shatae, and Sharon Robison among others. The jury found Warren guilty on all four counts. The court sentenced Warren to thirty-five years for each of his class A felony convictions under Counts I, II, and III and to four years for his class C felony conviction under Count IV and ordered the sentences under the four counts to be served concurrently with each other.

I.

The first issue is whether the court abused its discretion in admitting certain character testimony. We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. Roche v. State, 690 N.E.2d 1115, 1134 (Ind. 1997), reh'g denied. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied.

Generally, evidence of a person's character or trait of character is not admissible. Schwestak v. State, 674 N.E.2d 962, 964 (Ind. 1996); see Ind. Evid. R. 404(a) (providing that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion"). Ind. Evidence Rule 404(a)(1) provides an exception to this general exclusion when character evidence is offered by the prosecution to rebut character evidence first offered by the accused. Schwestak, 674 N.E.2d at 964. Rebuttal evidence "is limited to that which

6

tends to explain, contradict, or disprove evidence offered by the adverse party." Id. (citations omitted). Evidence of character or a trait of character of a person may be offered by testimony as to reputation. Id. (citing Ind. Evidence Rule 405(a)). Admission of rebuttal evidence is reviewed under an abuse of discretion standard, as it is within the trial court's discretion whether to admit such evidence. Id.

At trial, the State indicated to the court that it wished to question K.W.'s mother regarding previous violence by Warren, and the court did not permit the State to solicit such testimony at that time. Later during the trial, Shatae testified that she had known Warren for fifteen years and that she had a romantic relationship with him during that time. During cross examination, Warren's counsel asked Shatae "He's a good man basically," and Shatae responded "Yes." Transcript at 236.

The State requested to approach the bench, and outside the hearing of the jury the prosecutor stated that "[w]e now have a second incident where there was a direct inquiry into [Warren's] character," that "[t]here was a leading question as to the witness that she's known him for fifteen years, she's had a relationship with him and is he generally a good person," that "[a] good man I think is what was the specific question," and that "I cannot think of any more direct inquiry into someone's character [than] to say he was a good [man]." Id. at 243-244. The prosecutor argued that there were "two character issues that [Warren] has opened the door to," namely, Warren's previous violence against Shatae and allegations that Warren began a sexual relationship with Shatae when she was fifteen or sixteen years of age. Id. at 245. Warren's counsel argued that introducing domestic violence would have no probative value and would be unduly prejudicial and

7

that "[a]s far as the sexual relationship that may or may not have occurred, that was fifteen years ago." Id. at 246. The court ruled that, because Shatae was asked whether Warren was a good man, the State would be permitted to question Shatae about the alleged domestic violence of Warren against her but not about when any sexual activity began between Warren and Shatae.

Before the jury, the State asked Shatae if she remembered the question about Warren being "a good man," and Shatae responded affirmatively. Id. at 248. The State then asked: "Isn't it true that during the course of your relationship with him, that he struck you on multiple occasions. Physically hit you." Id. Shatae answered "Yes." Id. at 249. The State asked "How many times," and Shatae stated "I'm not for sure." Id. The State asked "Guess," Warren's counsel objected to further inquiry, and the court sustained the objection and ended any further inquiry along the lines of Warren's alleged domestic violence. Id.

Based upon the record, we cannot say that the court abused its discretion in overruling Warren's objection to the admission of the limited testimony of Shatae regarding the alleged previous violence by Warren against her. See Schwestak, 674 N.E.2d at 964-965 (holding in part that the State was entitled to rebut the defendant's evidence that he was a peaceful individual by presenting testimony of the defendant's reputation for violence). Further, we cannot conclude under the circumstances that the prejudicial effect of Shatae's testimony outweighed its probative value under Ind. Evidence Rule 403. The admission of the challenged portion of Shatae's testimony under

8

the circumstances and as limited by the trial court does not require reversal of Warren's convictions.

The next issue is whether the evidence is sufficient to sustain Warren's convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

In his appellant's brief, Warren appears to challenge his convictions for child molesting under Counts I and III. Specifically, Warren argues that the State failed to prove that he penetrated K.W.'s female sex organ by the male sex organ or by an object. As previously noted, Warren was convicted under Count I for child molesting as a class A felony for performing or submitting to deviate sexual conduct with K.W. by penetrating the female sex organ of K.W. with an object and under Count III for child molesting as a class A felony for performing or submitting to sexual intercourse with K.W.

The offense of child molesting as a class A felony is governed by Ind. Code § 35-42-4-3(a), which provides that "[a] person who, with a child under fourteen (14) years of

age, performs or submits to sexual intercourse or deviate sexual conduct[2] commits child molesting, a Class B felony," and that "the offense is a Class A felony if . . . it is committed by a person at least twenty-one (21) years of age . . . ." The Indiana Supreme Court has held that proof of even the slightest penetration is sufficient to sustain convictions for child molesting. Spurlock v. State, 675 N.E.2d 312, 315 (Ind. 1996), aff'd in relevant part on reh'g (1997). There is no requirement that the vagina be penetrated, only that the female sex organ, including the external genitalia, be penetrated. Smith v. State, 779 N.E.2d 111, 115 (Ind. Ct. App. 2002), trans. denied. The definition of the term "object" for the purposes of deviate sexual conduct includes a finger. D'Paffo v. State, 778 N.E.2d 798, 802 (Ind. 2002). Whether penetration occurred is a question of fact to be determined by the jury. Borkholder v. State, 544 N.E.2d 571, 577 (Ind. Ct. App. 1989).

The facts most favorable to the judgments under Counts I and III are that on or about July 2, 2009, Warren instructed K.W. "to lay down on the bed." Transcript at 158. K.W. testified that Warren then touched her "front rear with his finger and . . . then it was with his front rear." Id. at 158. K.W. testified that when Warren touched her with his finger and his penis, it "hurt" and caused her pain. Id. K.W. indicated that when she referred to either her or Warren's "front rear" she was referring to the part of the body that is used for "peeing." See id. at 147, 159. When asked whether Warren's finger went inside her body or stayed on the outside, K.W. testified that she "couldn't tell" but that

_____

[2] Ind. Code § 35-41-1-9 defines deviate sexual conduct as "an act involving: (1) a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object."

10

"[i]t hurt" and caused her pain. Id. at 158. When asked whether Warren's penis "stay[ed] on the outside of [her] body or did it go inside," K.W. answered "[w]ell, it couldn't go anywhere because he kept on leaning and it hurt . . . ." Id. at 159.

Further, during her testimony, Robison, the sexual assault nurse examiner who spoke with K.W., indicated that, when she testified that K.W. stated that Warren "put his finger . . . and his front rear in her front rear" and that "it just hurt when he put his front rear in my front rear," that the statements were "a direct quote from [K.W.]." Id. at 199. Also, K.W.'s diary, in which K.W. wrote that Warren "put his finger . . . and groin inside my you know what," see State's Exhibit 1, and the letter she wrote but never sent to Warren, in which K.W. wrote that "[d]oing that is called Raping" and "I am telling On you," see State's Exhibit 2, were admitted into evidence.

In addition, during the first incident which occurred in the bathroom about two weeks after K.W. finished fifth grade, Warren moved his finger on the outside and inside of K.W. Specifically, when asked whether Warren's "finger stay[ed] on the outside [of her] body or did they go inside," K.W. testified "[p]robably half and half, like he probably did both." Transcript at 149.

Based upon the record, we conclude that the State presented evidence of probative value from which a reasonable jury could have found Warren guilty of child molesting as class A felonies under Counts I and III. See Surber v. State, 884 N.E.2d 856, 861-869 (Ind. Ct. App. 2008) (holding that the evidence was sufficient to sustain the defendant's conviction for child molesting as a class A felony where the defendant "put his fingers and his penis inside [the victim's] privates"), trans. denied.

11

As previously mentioned, Warren appears to challenge his convictions for child molesting under Counts I and III only. Warren was convicted under Count II for child molesting as a class A felony for performing or submitting to deviate sexual conduct with K.W. by placing his mouth on the female sex organ of K.W. and under Count IV for child molesting as a class C felony for performing or submitting to fondling or touching K.W. with the intent of arousing or satisfying the sexual desires of Warren or K.W. With respect to his conviction under Count II, Warren does not argue that the evidence does not show that he placed his mouth on the sex organ of K.W. or that the evidence is otherwise insufficient to support his conviction. With respect to his conviction under Count IV, Warren's brief appears to include one sentence which may relate to the offense: "Furthermore, the State provided NO evidence that the act of touching was accompanied by the specific intent to arouse or satisfy sexual desires." Appellant's Brief at 7. We conclude that Warren has failed to set forth a cogent argument with respect to his class A felony conviction under Count II or his class C felony conviction under Count IV, and thus any argument related to the evidence supporting his convictions under Counts II and IV is waived. See Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument). Further, K.W. testified that in the bathroom Warren touched her "in a lot of places that [she] never want[ed] to be touched" and used his finger to touch K.W.'s "[f]ront rear," which is the part of the body K.W. referred to as the part she uses for

12

"[p]eeing." Transcript at 147. K.W. testified that at another time Warren entered the room where K.W. was wearing only a top, retrieved cocoa butter out of a drawer near his side of the bed, and applied the cocoa butter to both of K.W.'s thighs. In addition, K.W. testified that Warren "told [her] to lay down on the bed" and touched K.W.'s "front rear with . . . his tongue . . . ." Id. at 158. The State presented evidence of probative value from which a reasonable jury could have found Warren guilty of child molesting as a class A felony under Count II for placing his mouth on K.W.'s sex organ and of child molesting as a class C felony under Count IV for fondling or touching K.W. with the intent of arousing or satisfying the sexual desires of Warren or K.W.

For the foregoing reasons, we affirm Warren's four convictions for child molesting.

Affirmed.

MAY, J., and CRONE, J., concur.