**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**GREGORY L. FUMAROLO**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LEONEL H. ARELLANO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1309-CR-373 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D05-1208-FA-36

**May 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Leonel H. Arellano appeals his convictions and sentence for child molesting as a class A felony and two counts of child molesting as class C felonies. Arellano raises two issues, which we revise and restate as:

I. Whether the evidence is sufficient to sustain his convictions; and

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

J.M.'s mother ("Mother") gave birth to her in 1998. When J.M. was seven or eight years old, Arellano, who was born in 1972, moved into an apartment with Mother, J.M., and J.M.'s younger brother A.M. in Fort Wayne, Indiana. When Mother worked nights or went to the gym, Arellano would stay with J.M. and A.M. Sometimes J.M. would ask Arellano to help her draw people, and Arellano "would just write down inappropriate things like [private] body parts" which made J.M. feel uncomfortable. Transcript at 132.

In 2007, J.M.'s family and Arellano moved into a two-bedroom trailer, and in November 2008, Arellano and Mother were married. On one occasion following the family's move into the trailer, while Mother was at work, J.M. and Arellano were in the living room watching television while A.M. was playing video games on the floor, and Arellano pulled down J.M.'s pants and underwear and "acted like he was spanking" her. Id. at 135. However, Arellano did not actually spank J.M. and instead "his hand was just rubbing on [her] behind." Id. at 136. J.M. phoned her mother to tell her that Arellano had spanked her.

2

On another occasion, Arellano forced J.M. to touch his penis while they were in the living room watching television. Specifically, he "grabbed [her] by the wrist and pulled [her] hand." Id. at 147. J.M. touched Arellano's penis on top of his clothing.

On some occasions when Mother was not home, Arellano would ask J.M. to come to the back bedroom he and Mother shared to watch movies. They would sit on the bed, and Arellano would rub J.M.'s breasts on top of her clothes and under her bra. J.M. would not say anything about the touching because she was scared. On one occasion Arellano put his hands down J.M.'s shirt in her bedroom while her family was having a cookout.

Additionally, while in the back bedroom playing games or watching movies, Arellano "would unbutton [J.M.'s] pants and put his hand in [her] pants" on top of and under her underwear. Id. at 143. Arellano also inserted his fingers inside J.M.'s vagina which made her feel "good and bad." Id. at 141.

On another occasion in the back bedroom, J.M. was sitting on the edge of the bed with her legs dangling off the bed, and Arellano kneeled in front of her while her pants were "unbuttoned and pulled down a little bit." Id. at 142-143. Arellano opened J.M.'s legs and put his mouth on her vagina. Arellano also kissed J.M. on her mouth.

Once, when J.M. complained about washing the dishes, her Mother assigned her the job until J.M. turned eighteen. When J.M. stood at the sink, Arellano "would start rubbing on [her] behind and just feeling on [her]." Id. at 144. Arellano touched J.M. while washing dishes with his hands and his penis. He rubbed on top of J.M.'s clothing and lifted her shirt. Sometimes, when she was too tired to wash dishes or wanted to go outside to play, Arellano said that he would do the dishes for J.M. if she let him touch her.

3

The first time J.M. tried to tell Mother that Arellano had touched her, Mother "acted like she didn't believe [J.M.] and she separated [J.M. and Arellano], [J.M.] couldn't go anywhere with [Arellano] or [J.M. would] have to stay with" Mother. Id. at 149. J.M. did not initially tell Mother everything because she was scared that Arellano might hurt them. J.M. told two of her close friends the extent of what Arellano had done, and in December 2011, after Arellano had moved out of the trailer the previous March, she told Mother everything. The next day, Mother took J.M. to the police station where J.M. was interviewed and examined. At that time, J.M. was scared to tell the interviewer and the nurse that Arellano had put his mouth on her vagina.

On August 7, 2012, the State charged Arellano with Count I, child molesting as a class A felony; Count II, child molesting as a class C felony; and Count III, child molesting as a class C felony. On July 24, 2013, the court commenced a jury trial in which evidence consistent with the foregoing was presented. On July 25, 2013, the jury found Arellano guilty as charged. On August 19, 2013, the court held a sentencing hearing and sentenced Arellano to fifty years in the Department of Correction ("DOC") on Count I, and eight years each on Counts II and III, all to be served concurrently, for an aggregate term of fifty years in the DOC.

DISCUSSION

I.

The first issue is whether the evidence is sufficient to sustain Arellano's convictions for child molesting as a class A felony and as class C felonies. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of

4

witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

The offense of child molesting as a class A felony is governed by Ind. Code § 35-42-4-3(a), which provides: "A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if: (1) it is committed by a person at least twenty-one (21) years of age . . . ." Under Count I, the State was required to prove that Arellano, who was at least twenty-one years of age, performed or submitted to deviate sexual conduct with J.M., who was under fourteen years of age. "Deviate sexual conduct" means "an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-94.

Furthermore, the offense of child molesting as a class C felony is governed by Ind. Code § 35-42-4-3(b), which provides that "[a] person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony." Thus, to convict Arellano of child molesting as a class C felony, the State needed to prove that Arellano performed or

5

submitted to any fondling or touching of either J.M., a child under fourteen years of age, or Arellano, with the intent to arouse either J.M. or Arellano.

Arellano argues that "there was insufficient evidence presented, beyond a reasonable doubt, that he ever (1) digitally penetrated the female sex organ of J.M. or had oral sex with her; (2) fondled J.M. with his hands or rubbed his penis against her body; or (3) forced J.M. to touch his penis." Appellant's Brief at 11. He asserts that "the 'fake spanking' . . . purportedly occurred . . . while [J.M.'s] brother . . . was present in the room" and A.M. "did not see anything inappropriate." Id. Arellano also notes that J.M. called Mother and described the incident "as an actual spanking." Id. Regarding other incidents, Arellano suggests that the extent of the evidence that such incidents occurred was the testimony of J.M., and he argues that "there was no evidence, medical or otherwise, which corroborated J.M.'s testimony." Id. at 13. He also notes that he took the stand and denied the allegations. Further, he contends that the family lived "in relatively close quarters in the family's small trailer," yet Mother nor A.M. never "saw any inappropriate sexual conduct," that "the opportunity for these events . . . is also questionable given that [he] and [Mother] had separated many times during the period set forth in the Informations . . . including one separation that lasted up to a year," and that "J.M. appeared jealous of the relationship that Arellano had with her brother," and "she admitted to being upset that Arellano would take [A.M.] everywhere and she would have to stay home." Id. at 12. Arellano merely requests that we reweigh the evidence or judge the credibility of the witnesses, which we cannot do. Jordan, 656 N.E.2d at 817.

6

The record reveals that the testimony of J.M. was of detailed descriptions of various episodes of child molesting performed by Arellano, who was born in 1972 and was over twenty-one years old at all relevant times, on J.M., who at all relevant times was less than fourteen years old. J.M. testified to an occasion in which Arellano pulled down her pants and underwear and "acted like he was spanking" her, but he did not actually spank her and instead "his hand was just rubbing on [her] behind." Transcript at 135-136. According to J.M.'s testimony, Arellano forced her to touch his penis while they were in the living room watching television by grabbing her "by the wrist and pull[ing] [her] hand" to his penis over his clothing. Id. at 147. Arellano would ask J.M. to come to the back bedroom of the trailer to watch movies where he would rub J.M.'s breasts on top of her clothes and under her bra. Arellano once put his hands down J.M.'s shirt in her bedroom while her family was having a cookout. He also "would start rubbing on [her] behind and just feeling on [her]" while she would wash dishes with his hands and his penis, and when she was too tired to wash dishes or wanted to go outside to play, Arellano said that he would do the dishes for J.M. if she let him touch her. Id. at 144. Also while in the back bedroom, Arellano "would unbutton [J.M.'s] pants and put his hand in [her] pants" on top of and under her underwear, and he inserted his fingers inside J.M.'s vagina which made her feel "good and bad." Id. at 141, 143. There was also an occasion in which J.M. was sitting on the edge of the bed with her legs dangling off the bed, and Arellano kneeled in front of her while her pants were "unbuttoned and pulled down a little bit," opened her legs, and put his mouth on her vagina. Id. at 142-143.

Based upon the record, we conclude that the State presented evidence of probative value from which a reasonable jury could have found Arellano guilty of child molesting as a class A felony and child molesting as class C felonies. See, e.g., Surber v. State, 884 N.E.2d 856, 868 (Ind. Ct. App. 2008) (holding that the evidence was sufficient to sustain defendant's conviction for child molesting as a class A felony based primarily on the testimony of the child victim), trans. denied.

II.

The next issue is whether Arellano's sentence of fifty years is inappropriate in light of the nature of the offense and the character of the offender.[1] Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). Arellano argues that "he should not be given the maximum sentence on each" of his offenses, noting that much of his criminal history occurred in the 1990s and are mostly misdemeanors and that accordingly "it cannot be said that [he] is the 'worst of the worst.'" Appellant's Brief at 17.

Our review of the nature of the offenses reveals that Arellano engaged in multiple acts of fondling J.M., the daughter of Arellano's wife over whom Arellano maintained a position of trust. On one occasion, he acted like he was going to spank J.M. but instead

---

[1] The State argues that Arellano waived this issue by failing to make an argument regarding the nature of the offense and the character of the offender. However, Arellano does argue that his sentence is inappropriate under Indiana Appellate Rule 7(B). Thus, we will address the issue.

rubbed her behind. He would also rub J.M.'s breasts on top of her clothes and under her bra, and he would unbutton her pants and put his hand on top of and under her underwear. He also on one occasion forced J.M. to touch his penis over his clothing. Arellano inserted his fingers inside J.M.'s vagina which made her feel "good and bad." Transcript at 141. Also, on one occasion, while J.M. was sitting on the edge of the bed with her legs dangling off the bed, Arellano kneeled in front of her while her pants were "unbuttoned and pulled down a little bit," opened J.M.'s legs, and put his mouth on her vagina. Id. at 142-143. In sum, he repeatedly molested his step-daughter over a period of years.

Our review of Arellano's character reveals that in 1991 he was given a suspended sentence for public intoxication as a class B misdemeanor, and later that same year he was convicted for leaving the scene of a personal injury accident as a class A misdemeanor for which he was ordered to serve sixty days in the DOC as well as one year of probation. In 1993, he was given a suspended sentence for criminal recklessness as a class D felony and illegal consumption of alcohol by minor as a class C misdemeanor. In 1994, he was ordered to serve 10 days in the DeKalb County Jail for minor consuming alcohol as a class C misdemeanor. In 2005, Arellano was sentenced to 365 days suspended for domestic battery as a class A misdemeanor. The following year, Arellano was sentenced to one and one-half years suspended for domestic battery as a class D felony. As a result of this conviction, he was ordered to serve 180 days of the previously-suspended 2005 domestic battery sentence. On May 9, 2008, Arellano was discharged from probation. Also in 2008, he was sentenced to one year suspended for criminal conversion as a class A misdemeanor. We further note that his PSI stated that Arellano "advised he plans to abstain from trouble by

'avoiding females for a long time,'" Appellant's Appendix at 122, and at sentencing, by counsel, he inserted the word "unstable" before the word females. Sentencing Transcript at 5. The court interpreted this statement as "just sort of a last little cheap shot which was totally uncalled for" and served "as significant evidence of his complete lack of adult character of any kind and obviously suggests that he did nothing and rather it's the instability of this child that brought him to where he is."[2] Id. at 12. The PSI also states that Arellano's Risk and Needs Assessment puts him in the moderate risk category to reoffend.

We observe in reviewing Arellano's sentence that although the court ordered the maximum number of years executed on each count, it also ordered that his sentences be served concurrently. See Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010) (noting that in reviewing sentences pursuant to Ind. Appellate Rule 7(B), we may consider not only the appropriateness of the aggregate length of the sentence, but also "whether a portion of the sentence is ordered suspended or otherwise crafted using any of the variety of sentencing tools available to the trial judge"). After due consideration of the trial court's decision, we cannot say that Arellano has met his burden of showing that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

CONCLUSION

For the foregoing reasons, we affirm Arellano's convictions and sentences for child molesting as a class A felony and as class C felonies.

---

[2] The court went on to note that it did not consider this statement to be an aggravator.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.